[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
January 3, 2006
THOMAS K. KAHN
CLERK

No. 05-13623
Non-Argument Calendar

_____

BIA Nos. A97-634-793 & A97-634-794

CARLOS JOSE GASCON ORTEGA,
CLAUDIA NAHIR GUTIERREZ ESPINOZA,

Petitioners,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of an Order of the
Board of Immigration Appeals

_____

(January 3, 2006)

Before MARCUS, WILSON and KRAVITCH, Circuit Judges.

PER CURIAM:

Carlos Jose Gascon Ortega and his wife Claudia Gutierrez Espinoza seek

review of the Board of Immigrations Appeals's ("BIA") decision affirming the Immigration Judge's ("IJ") order of removal and denial of their application for asylum. Because substantial evidence supports the IJ's finding that Ortega and Espinoza failed to meet their burden of proof for asylum, we deny the petition.

I. Background

Ortega, a native and citizen of Venezuela, was admitted to the United States on a non-immigrant visitor visa with a termination date of April 11, 2003. Espinoza, also a native and citizen of Venezuela, was admitted before her husband on a visa scheduled to terminate March 30, 2003. Both remained beyond their respective dates and the Immigration and Naturalization Service ("INS")[1] issued Notices to Appear charging them with removability under INA § 237 (a)(1)(B), 8 U.S.C. § 1227(a)(1)(B).

Ortega filed an application for asylum[2] and withholding of removal under the INA and the Convention Against Torture ("CAT" relief).[3] In the application,

---

[1] On November 25, 2002, President Bush signed into law the Homeland Security Act of 2002("HSA"), Pub. L. No. 107-296, 116 Stat. 2125. The HSA created a new Department of Homeland Security ("DHS"), abolished the INS, and transferred its functions in to the new department.

[2] Ortega and Espinoza rely on Ortega's application for asylum.

[3] On appeal, Ortega challenges only the IJ's failure to grant asylum. Therefore, he has abandoned any claim of error with regard to withholding of removal or relief under the CAT. Sepulveda v. U.S. Att'y Gen., 401 F.3d 1226, 1228 (11th Cir. 2005). Nevertheless, because the asylum claim fails, the remaining claims are without merit. Forgue v. U.S. Att'y Gen., 401 F.3d 1282, 1288 n.4 (11th Cir. 2005) (explaining that, where an applicant fails to establish a claim of

Ortega alleged that he had received threatening phone calls and he had been physically attacked due to his political opinion. He stated that he feared he would be killed if he returned to Venezuela. Alternatively, Ortega and Espinoza requested voluntary deportation.

At the hearing before the IJ, Ortega and Espinoza conceded their removability based on the allegations in the Notice to Appear. Ortega testified as follows: He lived in Valencia, Venezuela, where he worked as a security supervisor at a casino and previously worked for the police. He had traveled to Cuba for business and vacation before he began to oppose Venezuelan President Hugo Chavez's political position and prior to his participation in several marches and protests. During one of the marches, he carried a flag opposing Chavez. In another march, he acted as armed security for a regional governor who also opposed Chavez. After Ortega began his political involvement, Ortega visited the United States, but he did not request asylum during that visit. Beginning in May 2002, after he returned to Venezuela from the United States, Ortega received at least five calls to his cell phone from an unidentified man using filthy language, calling Ortega a traitor, and telling him to stop participating. Ortega believed the

asylum on the merits, the other claims for withholding of removal under the INA or under CAT generally fail).

man was affiliated with the Bolavarian Circle, a pro-Chavez group.[4]  Ortega  did

not report the calls to the police despite his prior employment because he feared the

police were controlled by Chavez.  One morning, Ortega was attacked and beaten

as he left home on his way to work.  After the attack, he received another call,

which his wife answered, reiterating the warnings.[5]  At this point, he decided to

leave Venezuela.  Ortega did not believe relocating would be sufficient protection

and he feared he would be killed if returned to Venezuela.

In support of the application, Ortega and Espinoza submitted various

newspaper articles and information from the INS detailing the political unrest and

violence in Venezuela.

The IJ denied asylum and ordered Ortega and Espinoza removed based on

clear and convincing evidence.  The IJ found that, although there was evidence of

unrest and violence in Venezuela, Ortega had not stated a threat of persecution

based on a protected activity, as the testimony established that Ortega was not

politically active even though he had participated in marches against President

Chavez.  The IJ noted that Ortega did not report the phone calls to police, nor did

he change his cell phone number after receiving the calls.  The IJ did, however,

---

[4]  Ortega's mother-in-law answered one of the calls.

[5]  Espinoza testified to confirm Ortega's participation in political marches and the content of the call after the attack.

grant the request for voluntary deportation. Ortega and Espinoza appealed the IJ's determination, and the BIA summarily affirmed.

II. The Appeal

On appeal, Ortega and Espinoza argue that the IJ erred by denying the application for asylum because Ortega qualified as a refugee and established both past persecution and a well-founded fear of future persecution. He further asserts that he could not relocate safely because the threat exists on a country-wide basis.

Because the BIA affirmed the IJ's decision without opinion, pursuant to 8 C.F.R. § 3.1(e)(4) (2002), the IJ's decision became the final agency decision subject to review.[6] See Al Najjar v. Ashcroft, 257 F.3d 1262, 1284 (11th Cir. 2001). Factual determinations are reviewed under the substantial evidence test, and this court "must affirm the [IJ's] decision if it is 'supported by reasonable, substantial, and probative evidence on the record considered as a whole.'" Al Najjar, 257 F.3d at 1283-84 (internal citation omitted). This court must defer to

---

[6] Because the removal proceedings commenced after April 1, 1997, the effective date of IIRIRA, this case is governed by the permanent provisions of the INA, as amended by IIRIRA. Gonzalez-Oropeza v. U.S. Att'y Gen., 321 F.3d 1331, 1332 (11th Cir. 2003). Congress recently passed the Real ID Act, which altered this court's review of immigration appeals. In Huang v. U.S. Att'y Gen., – F.3d – , 2005 WL 2877389 (11th Cir. Sept. 8, 2005), this court noted that, pursuant to the REAL ID Act, all petitions for review are to be governed by the permanent rules, and that, under the Act as codified at INA 208(b)(1), 8 U.S.C. § 1158(b)(1), the Secretary of Homeland Security, in addition to the Attorney General, had discretion to grant asylum. See also Tovar-Alvarez v. U.S. Att'y Gen., 427 F.3d 1350, 1351 (11th Cir. 2005).

the IJ's decision as supported by substantial evidence unless the evidence compels a reasonable fact finder to find otherwise. Immigration and Naturalization Serv. v. Elias-Zacarias, 502 U.S. 478, 481, 112 S.Ct. 812, 815, 117 L.Ed.2d 38 (1992).

The Attorney General has discretion to grant asylum if an alien meets the INA's definition of "refugee." INA § 208(b)(1), 8 U.S.C. § 1158(b)(1). The INA defines "refugee" as follows:

> [A]ny person who is outside any country of such person's nationality . . . and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of . . . political opinion . . . .

8 U.S.C. § 1101(a)(42)(A) & (B). The asylum applicant bears the burden of proving refugee status. Al Najjar, 257 F.3d at 1284. The alien's testimony, if credible, may be sufficient to sustain the burden of proof. 8 C.F.R. §§ 208.13(a), 208.16(b). "However, the weaker the applicant's testimony, the greater the need for corroborative evidence." In re Y-B, 21 I&N Dec. 1136, 1139 (BIA 1998).

To establish asylum eligibility, the alien must show (1) past persecution on account of a statutorily listed factor,[7] or (2) a "well-founded fear" that the

---

[7] These factors include race, religion, nationality, membership in a particular social group, or political opinion. INA § 101(a)(42)(A), 8 U.S.C. § 1101(a)(42)(A).

6

statutorily listed factor will cause such future persecution.[8]  8 C.F.R. § 208.13(a),

(b); Al Najjar, 257 F.3d at 1287.  To meet this burden, the alien must "present

specific, detailed facts showing a good reason to fear that he or she will be singled

out for persecution on account of such an opinion."  Al Najjar, 257 F.3d at 1287

(internal quotation omitted) (emphasis in original).  An asylum applicant may not

show merely that he has a political opinion, but must show that he was persecuted

because of that opinion.  Elias-Zacharias, 502 U.S. at 483; Sanchez v. U.S. Att'y

Gen., 392 F.3d 434, 438 (11th Cir. 2004) (citation omitted).

Even if an alien cannot show past persecution, he may be entitled to asylum

relief if he can establish a future threat to his life or freedom based on the protected

ground.  Id.  "An alien cannot demonstrate that he more-likely-than-not would be

persecuted on a protected ground if the IJ finds that the alien could avoid a future

threat by relocating to another part of his country."[9]  Id.

As this court has explained, "'persecution' is an extreme concept, requiring

more than a few isolated incidents of verbal harassment or intimidation, and . . .

---

[8]  In other words, an applicant must demonstrate "that his or her fear of persecution is subjectively genuine and objectively reasonable.  The subjective component is generally satisfied by the applicant's credible testimony that he or she genuinely fears persecution.  In most cases, the objective prong can be fulfilled either by establishing past persecution or that he or she has a 'good reason to fear future persecution.'" Yang v. U.S. Att'y Gen., 418 F.3d 1198, 1202 (11th Cir. 2005).

[9]  Although Ortega argues that the IJ erred in finding that he could relocate, it does not appear that the IJ based its decision to deny relief on this factor.

7

mere harassment does not amount to persecution." Sepulveda v. U.S. Att'y Gen., 401 F.3d 1226, 1231 (11th Cir. 2005) (internal quotations omitted).

Here, there is substantial evidence supporting the IJ's conclusion. First, although the phone calls and attack may support a finding of persecution, they do not necessarily compel such a conclusion. See Sepulveda, 401 F.3d at 1231. Moreover, a single attack and a few phone calls does not rise to the level of persecution. Id. Accordingly, the IJ properly concluded that Ortega failed to establish past persecution.

The IJ also properly determined that Ortega failed to show an objectively reasonable fear of future persecution.[10] After the calls, Ortega did not report the incidents to the police, nor did he change his cell phone number. In addition, Ortega did not decide to leave Venezuela until after the attack, but there is little evidence showing a causal connection between the attack and Ortega's political expression. Ortega offered no evidence, other than his belief, that the attack was connected to his political opinion. In the absence of any specific evidence showing

---

[10] Notably, the IJ did not specify whether or not it found Ortega's testimony to be credible, although it appears the IJ found Ortega lacked credibility because he did not report the calls, did not change his phone number, the caller never identified himself, Ortega did not seek asylum when he was in the United States on an earlier trip, and Ortega's previous visit to Cuba seemed to negate Ortega's political activism. Because the IJ did not make specific credibility findings, we assume that the credibility determination was not dispositive of the issue. Yang v. U.S. Att'y Gen., 419 F.3d 1198, 1201 (11th Cir. 2005); see also Mangra v. U.S. Att'y Gen., 2005 WL 2815844, at *2 (No. 05-12342) (11th Cir. Oct. 28, 2005) (unpublished).

a causal connection, the IJ properly concluded that Ortega failed to show an objectively reasonable fear of future persecution. Yang, 418 F.3d at 1202. Accordingly, we DENY the petition.