[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MARCH 9, 2011
JOHN LEY
CLERK

No. 10-11637
Non-Argument Calendar

_____

Agency No. A088-264-334


JOSE DE JESUS BRACHO-PRIETO,
GRACIELA JOSEFINA URDANETA DE BRACHO,

Petitioners,

versus

U.S. ATTORNEY GENERAL,

Respondent.


_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(March 9, 2011)

Before TJOFLAT, CARNES and KRAVITCH, Circuit Judges.

PER CURIAM:

Jose Bracho-Prieto[1] seeks review of the Board of Immigration Appeals's (BIA) final order affirming the Immigration Judge's (IJ) denial of his application for asylum, withholding of removal, and relief under the United Nations Convention Against Torture (CAT).[2]  On review, we conclude that the BIA's decision is supported by substantial evidence and, accordingly, deny the petition.

Bracho-Prieto, a native and citizen of Venezuela, entered the United States in 2007 and remained after the expiration of his visa.  After the Department of Homeland Security issued a notice to appear, charging him as removable, Bracho-Prieto filed an application for relief from removal on the grounds that he had suffered political persecution in Venezuela.

At the removal hearing, Bracho-Prieto testified that he had participated in demonstrations against Venezuelan President Hugo Chavez and was a member of the Un Nuevo Tiempo party.  He had been politically active from 2002 through 2005 and had supported the opposition candidate in the 2005 election.  In 2006, Bracho-Prieto traveled to the United States on vacation.  Although Bracho-Prieto ceased his political activities in 2005, after he returned to Venezuela in January

---

[1]The petitioner's wife, Graciela Josefina Urdaneta de Bracho, sought derivative relief based on Bracho-Prieto's asylum application.

[2]  Bracho-Prieto has abandoned his claim for CAT relief by failing to adequately raise it in his initial brief.  *See Sepulveda v. U.S. Att'y Gen.*, 401 F.3d 1226, 1228 n.2 (11th Cir. 2005).

2007 he received about ten threatening phone calls from someone who claimed to be a member of the Bolivarian Circles.  The following month, his house was vandalized.  Bracho-Prieto assumed the Bolivarian Circles was responsible because he found a pamphlet containing additional threats in the garden.  Finally, one afternoon as he was going to the store, three men approached him, hit him, and made a hand motion like pulling out a weapon.  When Bracho-Prieto screamed, shoppers came out of the store and the men fled.  Bracho-Prieto believed the men were members of the Bolivarian Circles because they wore red shirts and had called him a "country-seller" and "squalid" while hitting him.  Bracho-Prieto was treated for anxiety and trauma to his upper arm after the attack.

Bracho-Prieto also testified that his adult children had been persecuted by members of the Bolivian Circles.  One of his sons had received threatening phone calls, been beaten, and had a rock thrown at his car.  Another son had also received threatening calls and had been attacked with a bat.  Bracho-Prieto's daughter had been attacked while working for the opposition candidate.  Bracho-Prieto's nephew, another member of the opposition, had also been attacked.  All have since come to the United States and been granted asylum.

The IJ denied relief, finding that Bracho-Prieto's testimony lacked credibility.  Specifically, the IJ noted that it was unlikely that Bracho-Prieta had

3

been threatened and attacked in 2007 on account of his political activities when he had ceased his political activities in 2005. The IJ also noted that Bracho-Prieto had not included his children's alleged persecution in his asylum application and that none of the children had attended the removal hearing.[3] Additionally, the IJ noted that there were inconsistencies between Bracho-Prieto's written application and his testimony concerning whether Bracho-Prieto had notified police about the threats, vandalism, and attack. The IJ also found that the allegations about the children's persecution were not credible and had likely involved ordinary street crimes.

The IJ also denied relief on the merits of the allegations, finding that the events did not rise to the level of persecution, Bracho-Prieto had not shown an objectively reasonable fear of future persecution, there was nothing to show the incidents were due to Bracho-Prieto's political activities, and there was no evidence the government was responsible.

The BIA affirmed the denial of relief, agreeing with the IJ that the facts did not establish past persecution or a well-founded fear of future persecution. The BIA also agreed with the IJ's adverse credibility finding for the reasons given by

_____

[3] Bracho-Prieto's children apparently live in Ocala, Florida. The removal hearing was held in Orlando, Florida.

4

the IJ.

Bracho-Prieto now petitions this court for review. In his petition, he argues first that the IJ and BIA erred in finding him not credible because any discrepancies in his testimony were minor and were not relevant to his reasons for fearing to return to Venezuela. Second, he argues that the Bolivarian Circles harassed him based on his political opinions and that, taken in combination, the incidents rise to the level of persecution.

## I.

We review only the BIA's decision, except to the extent that the BIA expressly adopts the IJ's opinion or reasoning. *Al Najjar v. Ashcroft*, 257 F.3d 1262, 1284 (11th Cir. 2001). Because the BIA adopted the IJ's opinion and reasoning by reiterating it in its order, we review both decisions. *See id*.

"[A]n adverse-credibility determination alone may be sufficient to support the denial of an asylum application" where the applicant has not provided corroborating evidence. *Forgue v. U.S. Att'y Gen.*, 401 F.3d 1282, 1287 (11th Cir. 2005). We review credibility determinations under the substantial-evidence test. *Chen v. U.S. Att'y Gen.*, 463 F.3d 1228, 1230-31 (11th Cir. 2006). Under this test, we must affirm the decision if it is "supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Al Najjar*, 257 F.3d at

5

1284.  There must also be "specific, cogent reasons" for an adverse-credibility

finding.  *Chen*, 463 F.3d at 1231. Credibility determinations "can be reversed only

if the evidence 'compels' a reasonable fact finder to find otherwise."  *Id.*

In asylum applications like Bracho-Prieto's, filed after the effective date of

the REAL ID Act of 2005, an adverse-credibility determination may be based on

any inconsistency, regardless of whether the inconsistency goes to the heart of the

claim.  *Tang v. U.S. Att'y Gen.*, 578 F.3d 1270, 1277 (11th Cir. 2009); 8 U.S.C.

§ 1158(b)(1)(B)(iii).  Under the regulations,

> Considering the totality of the circumstances, and all relevant factors,
> a trier of fact may base a credibility determination on the demeanor,
> candor, or responsiveness of the applicant or witness, the inherent
> plausibility of the applicant's or witness's account, the consistency
> between the applicant's or witness's written and oral statements
> (whenever made and whether or not under oath, and considering the
> circumstances under which the statements were made), the internal
> consistency of each such statement, the consistency of such
> statements with other evidence of record (including the reports of the
> Department of State on country conditions), and any inaccuracies or
> falsehoods in such statements, without regard to whether an
> inconsistency, inaccuracy, or falsehood goes to the heart of the
> applicant's claim, or any other relevant factor.

8 U.S.C. § 1158(b)(1)(B)(iii).

Here, the IJ's adverse credibility finding was supported by "specific, cogent

reasons."  The IJ noted that it was unlikely Bracho-Prieto would suffer persecution

more than a year after he had ceased his political work.  The IJ also noted that

Bracho-Prieto's children, who allegedly also experienced persecution, were not present to testify. Moreover, the inconsistencies between Bracho-Prieto's written asylum application and his testimony provide specific and cogent reasons for the adverse credibility finding. The record does not compel a finding that Bracho-Prieto's testimony was credible.

## II.

We review factual determinations under the substantial-evidence test, and the interpretation of the applicable statutes *de novo*. *Al Najjar*, 257 F.3d at 1283-84. We "must affirm the BIA's decision if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Id*. at 1284 (internal quotations omitted). Under this test, we view "the record evidence in the light most favorable to the agency's decision and draw all reasonable inferences in favor of that decision." *Adefemi v. Ashcroft*, 386 F.3d 1022, 1027 (11th Cir. 2004) (*en banc*). Accordingly, "[t]o conclude the BIA's decision should be reversed, we must find that the record not only supports the conclusion, but compels it." *Ruiz v. Gonzales*, 479 F.3d 762, 765 (11th Cir. 2007) (internal quotations omitted).

The Attorney General or Secretary of Homeland Security has discretion to grant asylum if the alien meets the definition of "refugee," as defined by 8 U.S.C.

§ 1101(a)(42)(A). 8 U.S.C. § 1158(b)(1)(A). A refugee is defined as:

> any person who is outside any country of such person's nationality . . . and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of . . . political opinion.

8 U.S.C. § 1101(a)(42)(A). The asylum applicant carries the burden of establishing asylum eligibility. *Al Najjar*, 257 F.3d at 1284. Asylum relief may be based on past persecution, or on a well-founded fear of future persecution. *Silva v. U.S. Att'y Gen.*, 448 F.3d 1229, 1236 (11th Cir. 2006). Establishing past persecution for the purpose of an asylum claim requires the applicant to prove "(1) that []he was persecuted, and (2) that the persecution was on account of a protected ground."[4] *Id*. Establishing a well-founded fear of future persecution for the purpose of an asylum claim requires the applicant to prove "(1) a subjectively genuine and objectively reasonable fear of persecution that is (2) on account of a protected ground." *Id*. (citations omitted). The subjective prong of the well-founded-fear test is satisfied "by the applicant's credible testimony that he or she genuinely fears persecution," and the objective prong is satisfied if the applicant

---

[4] A showing of past persecution creates a rebuttable presumption of a well-founded fear of future persecution. *Sepulveda*, 401 F.3d at 1231. The government may rebut this presumption by showing, by a preponderance of the evidence, either (1) a change in the country's conditions, or (2) that relocation within the country would avoid future persecution and that it was reasonable to expect the alien to do so. 8 C.F.R. § 208.13(b)(1)(i)(A) and (B).

establishes that he "has a good reason to fear future persecution." *De Santamaria v. U.S. Att'y Gen.*, 525 F.3d 999, 1007 (11th Cir. 2008).

To qualify for withholding of removal, an alien must show that if returned to his country, his life or freedom would be threatened on account of race, religion, nationality, membership in a particular social group, or political opinion. 8 U.S.C. § 1231(b)(3). Because the standard for withholding of removal is higher than the well-founded-fear standard for asylum, an applicant who does not reach the threshold for asylum also fails to reach the threshold for withholding of removal. *Al Najjar*, 257 F.3d at 1292-93.

We have defined "persecution" as "an extreme concept, requiring more than a few isolated incidents of verbal harassment or intimidation." *Sepulveda*, 401 F.3d at 1231 (internal quotations omitted). We have held that a single beating, coupled with assorted threats, did not constitute past persecution or give rise to a well-founded fear of future persecution because the applicant only suffered minor injuries, in the form of bruising, from that beating. *Djonda v. U.S. Att'y Gen.*, 514 F.3d 1168, 1174 (11th Cir. 2008).

Here, substantial evidence supports the finding that Bracho-Prieto did not suffer past persecution. Even if Bracho-Prieto's testimony was credible, he suffered several threatening phone calls, one incident of vandalism to his house,

9

and one minor beating that resulted in only bruises. Even if we assume that they were related to a protected ground, these incidents, while harassing, do not reach the "extreme" level required.

Moreover, Bracho-Prieto cannot show that he has a well-founded fear of future persecution that is both subjectively and objectively reasonable. Bracho-Prieto has not been involved in politics in years and there is no evidence that he would face persecution should he return to Venezuela.

Finally, because Bracho-Prieto failed to meet his burden of establishing his eligibility for asylum, he also failed to meet the higher burden of proof necessary to establish eligibility for withholding of removal.

**PETITION DENIED.**