[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-15159
Non-Argument Calendar
_____

Agency No. A087-465-273


HENNY JULIANA JONG,
a.k.a. Widya Agustine,

                                                            Petitioner,

versus

U.S. ATTORNEY GENERAL,

                                                            Respondent.


_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(July 10, 2017)

Before TJOFLAT, WILLIAM PRYOR, and JULIE CARNES, Circuit Judges.

PER CURIAM:

Petitioner Henny Jong, a native and citizen of Indonesia, petitions for review of the Board of Immigration Appeals's ("BIA") order affirming the Immigration Judge's ("IJ") denial of her applications for asylum, withholding of removal, and relief under the United Nations Convention Against Torture ("CAT"). On appeal, Petitioner argues that substantial evidence does not support the IJ's and BIA's denial of her claim for withholding of removal because she established that she suffered past persecution, as well as a clear probability of future persecution based on her ethnicity and religion. After careful review, we deny the petition for review.

## I.    BACKGROUND

In August 2004, Petitioner entered the United States on a visitor's visa with permission to remain until February 14, 2005. Nearly five years later, after overstaying her visa by four years, Petitioner filed an application for asylum, withholding of removal, and CAT relief in February 2009, alleging that she feared returning to Indonesia because she is Buddhist and of Chinese ancestry. The Department of Homeland Security subsequently issued Petitioner a notice to appear, charging her with removability pursuant to 8 U.S.C. § 1227(a)(1)(B), for remaining in the United States longer than permitted after being admitted as a non-immigrant.

The IJ conducted a merits hearing on Petitioner's applications. According to Petitioner's application and her testimony at the hearing, Petitioner is ethnically Chinese, speaks Mandarin, and observes Chinese traditions. She applied for asylum because of murders, rapes, religious conflicts, and persecution that allegedly occur in Indonesia. When Petitioner was in elementary school, a law was enacted that discriminated against Chinese people, and it forced her father's business to close. She had to quit school and go to work in her uncle's food store. Native Indonesians caused problems at her uncle's store, such as demanding money and drinking and vomiting on the premises. These men would ask for money and cigarettes in the middle of the night and shout: "[G]ive us money or we'll burn your house." In May 1998, a riot lasting three days broke out in Jakarta. After a shopping plaza near Petitioner's home was set on fire, she and her husband felt forced to hide in the attic. She did not want to return to Indonesia because she was traumatized by the events that happened to her and she had heard that similar events were still happening there. For instance, extremists bombed a Buddhist temple in West Jakarta in 2013.

The IJ denied Petitioner's applications for asylum, withholding of removal, and CAT relief. As to her asylum claim, the IJ determined that Petitioner's application filed in 2009, nearly five years after she arrived in the United States, was untimely. As to her claim for withholding of removal, the IJ first concluded

3

that the harassment and discrimination she had experienced did not rise to the level of past persecution.  Petitioner also failed to establish a likelihood of future persecution, as the United States State Department country report did not refer to any incidents or attacks against the Chinese or Buddhists communities.  Further, Petitioner had not shown that she would be singled out for persecution.  She remained in Indonesia for six years after the 1998 riots, and her family still resides in Indonesia, having apparently suffered no harm.  Petitioner also failed to show a pattern or practice of persecuting Chinese Buddhists in Indonesia.  Finally, the IJ denied her application for CAT relief.

The BIA affirmed the IJ's decision and dismissed her appeal.  The BIA found no error in the IJ's determination that Petitioner was statutorily ineligible for asylum.  The BIA also agreed that Petitioner had failed to demonstrate eligibility for withholding of removal.  Although Petitioner had suffered some harassment and discrimination and had felt forced to hide during the 1998 riots, Petitioner's mistreatment did not rise to the level of past persecution.  Moreover, Petitioner had not established that she would be singled out for persecution, or that there was a pattern or practice of persecution of Chinese Buddhists in Indonesia.  The BIA also affirmed the IJ's denial of CAT relief.

4

## II.    DISCUSSION

### A.    Standard of Review

We review the BIA's decision as the final judgment, unless the BIA expressly adopted the IJ's decision. *Lopez v. U.S. Att'y Gen.*, 504 F.3d 1341, 1344 (11th Cir. 2007). Where the BIA agrees with the IJ's reasoning, we also review the decision of the IJ to the extent of that agreement. *Kazemzadeh v. U.S. Att'y Gen.*, 577 F.3d 1341, 1350 (11th Cir. 2009). Here, the BIA issued its own opinion, but agreed with several aspects of the IJ's reasoning. Thus, we review the BIA's decision and the decision of the IJ to the extent of that agreement. *See id.*

We review factual findings for substantial evidence. *Forgue v. U.S. Att'y Gen.*, 401 F.3d 1282, 1286 (11th Cir. 2005). Under the substantial evidence test, we must affirm a determination "if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Id.* (quotation omitted). The evidence is viewed in the light most favorable to the agency's decision, drawing all reasonable inferences in favor of that decision. *Id.* In other words, we will only reverse a factual finding if the record compels reversal. *Id.* at 1287. The fact that evidence in the record may also support a conclusion contrary to the administrative findings does not justify reversal. *Adefemi v. Ashcroft*, 386 F.3d 1022, 1027–29 (11th Cir. 2004) (*en banc*).

## B.    Withholding of Removal Claim

Petitioner challenges only the agency's denial of her withholding of removal claim.[1]  To qualify for withholding of removal, an applicant must establish that her life or freedom would be threatened in her country of origin on account of her race, religion, nationality, membership in a particular social group, or political opinion. *See* 8 U.S.C. § 1231(b)(3)(A).  The burden is on the alien to show a clear probability of future persecution, meaning that it is "more likely than not" that she will be persecuted or tortured if returned to her country.  *Sepulveda v. U.S. Att'y Gen.*, 401 F.3d 1226, 1232 (11th Cir. 2005).

An alien may satisfy her burden of proof for withholding of removal in two ways.  First, an alien may establish past persecution based on a protected ground. *See Sanchez v. U.S. Att'y Gen.*, 392 F.3d 434, 437 (11th Cir. 2004).  Past persecution creates a rebuttable presumption that her life or freedom would be threatened upon return to her country.  *See id.*  Second, if an alien does not show past persecution, she may still be entitled to withholding of removal if she establishes that it is more likely than not that she would be persecuted upon removal due to a protected ground.  *Id.*

---

[1]  Because Petitioner does not challenge the agency's denial of her applications for asylum or CAT relief, she has abandoned any challenge she may have had on appeal.  *See Sepulveda v. U.S. Att'y Gen.*, 401 F.3d 1226, 1228 n.2 (11th Cir. 2005) (concluding that issues not raised on appeal are deemed abandoned).  We would lack jurisdiction over Petitioner's asylum claim in any event, however, because the IJ and BIA determined that it was untimely filed.  *See* 8 U.S.C. § 1158(a)(3) (stating that courts lack jurisdiction to review the determination that an asylum claim is untimely).

### 1.    Past Persecution

Petitioner first argues that substantial evidence does not support the BIA's and IJ's determination that she did not suffer past persecution. She contends that the BIA and IJ erred by failing to consider the cumulative harm she suffered and improperly required her to show that she suffered physical harm.

"[P]ersecution is an extreme concept, requiring more than a few isolated incidents of verbal harassment or intimidation, and . . . mere harassment does not amount to persecution." *Sepulveda*, 401 F.3d at 1231 (quotations omitted and alteration accepted). We have concluded that threats in conjunction with brief detentions or a minor physical attack that did not result in serious physical injury do not rise to the level of persecution. *See Kazemzadeh*, 577 F.3d at 1353 (arrest, five-hour interrogation and beating, followed by four-day detention was not persecution). When making a determination regarding whether an alien has suffered past persecution, the agency must consider the cumulative harm suffered by the alien. *Delgado v. U.S. Att'y Gen.*, 487 F.3d 855, 861 (11th Cir. 2007).

Here, substantial evidence supports the IJ's and BIA's determination that Petitioner failed to establish past persecution. Petitioner's testimony shows that: she was forced to quit school and her father's business closed as a result of discriminatory laws against the ethnic Chinese in Indonesia; native Indonesians came into her uncle's store and demanded money, on one occasion threatening to

burn the family house down if they were not paid; and she and her husband hid in their attic after native Indonesians burned down a shopping plaza near her home during the 1998 riots.  Our review of the record does not support Petitioner's argument that the BIA and IJ failed to consider the cumulative effect of the harm she suffered.  Further, considering these incidents cumulatively, we cannot say that they compel the conclusion that Petitioner suffered past persecution.  *Compare Shi v. U.S. Att'y Gen.*, 707 F.3d 1231, 1232–33, 1237 (11th Cir. 2013) (holding that a seven-day detention where petitioner was interrogated twice, physically abused while being questioned about religion, and handcuffed to a bar in the rain outside overnight constituted persecution), *with Kazemzadeh*, 577 F.3d at 1353; *see also Djonda v. U.S. Att'y Gen.*, 514 F.3d 1168, 1171, 1174 (11th Cir. 2008) (concluding that minor threats in conjunction with a beating and a 36-hour detention did not amount to persecution).

Although an alien is not required to show actual physical harm in order to establish past persecution, Petitioner primarily experienced harassment and discrimination that was not accompanied by any other form of severe mistreatment.  *See De Santamaria v. U.S. Att'y Gen.*, 525 F.3d 999, 1009 (11th Cir. 2008) (concluding that physical injury is not required to establish past persecution, as an alien may demonstrate past persecution through threats combined with other serious mistreatment).  In short, the incidents described by Petitioner do not

amount to the "extreme and egregious" mistreatment that we have held sufficient to constitute past persecution.  *See Shi*, 707 F.3d at 1232–35.[2]

### 2.    Clear Probability of Future Persecution

Petitioner further asserts that the record compels the conclusion that she has shown a clear probability of future persecution.  In particular, she argues that the BIA failed to consider the evidence establishing a pattern or practice of persecution against Buddhists in Indonesia.

Because Petitioner did not establish past persecution, she was not entitled to a rebuttable presumption of future persecution.  *See Sanchez*, 392 F.3d at 437. Petitioner was thus required to show that she possesses a clear probability of future persecution.  *See id.*  To establish the likelihood of future persecution, an alien must show either that she will be singled out for persecution or that the country has a pattern or practice of persecuting those who are of Chinese ethnicity or practice the Buddhist religion.  *See* 8 C.F.R. § 208.16(b)(2).

Substantial evidence supports the IJ's and BIA's determination that Petitioner failed to show that, if returned to Indonesia, her life or freedom would more likely than not be threatened on account of her ethnicity or religion. Petitioner points to news articles that describe several bombings and attacks on

---

[2]  To the extent Petitioner also argues that she suffered economic persecution due to her father's business closing and having to quit school, this argument is not well taken.  *See Wu v. U.S. Att'y Gen.*, 745 F.3d 1140, 1156–57 (11th Cir. 2014) (explaining that in order to show economic persecution, the economic barrier must render the petitioner to an "impoverished existence." (quotation omitted)).

Buddhist temples that have been carried out by Muslim terrorist groups. However, these articles do not compel a determination that Petitioner will be singled out for persecution or that there is a pattern or practice of persecuting ethnic Chinese or Buddhists in Indonesia.

The 2009 U.S. State Department Religious Freedom Report states that Indonesia generally respects freedom of religion, Buddhism is one of six recognized religions, and Buddhists are able to obtain identity cards and register marriages and births. Other news articles discussed reforms following the 1998 riots which enabled ethnic Chinese citizens to keep their Chinese names and celebrate Chinese holidays. Moreover, the fact that Petitioner's husband, son, daughter-in-law, and grandchildren—all of whom are Chinese Buddhists—have remained in Indonesia, apparently without incident, cuts against her claim that there is a pattern or practice of persecuting similarly situated individuals. *See Ruiz v. U.S. Att'y Gen.*, 440 F.3d 1247, 1259 (11th Cir. 2006) (concluding that petitioner's future-persecution claim was less persuasive where the petitioner's family remained in the country unharmed).

To the extent Petitioner argues that the BIA failed to give reasoned consideration to her withholding of removal claim, we disagree. The BIA may not have discussed every piece of Petitioner's evidence—nor was it required to do so—but the record shows that the BIA "consider[ed] the issues raised and

10

announce[d] its decision in terms sufficient to enable [us] to perceive that it has heard and thought and not merely reacted." *Seck v. U.S. Att'y Gen.*, 663 F.3d 1356, 1364 (11th Cir. 2011).  Thus, the record does not compel the conclusion that it is more likely than not that Petitioner's life or freedom will be threatened on account of her ethnicity or religion if she returns to Indonesia.

## III.    CONCLUSION

Based on the foregoing, substantial evidence supports the IJ's and BIA's determination that Petitioner was not eligible for withholding of removal. Accordingly, we deny the petition for review.

**PETITION DENIED.**