[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-11097
Non-Argument Calendar
_____

Agency No. A202-073-728


WENDY DIAZ-DE ROJAS,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.


_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(November 7, 2018)

Before MARTIN, JORDAN, and NEWSOM, Circuit Judges.

PER CURIAM:

Wendy Diaz-De Rojas seeks review of the Board of Immigration Appeals's final order affirming the Immigration Judge's denial of her application for asylum and withholding of removal. On appeal, Diaz-De Rojas argues that the record compels reversal of the agency's adverse credibility finding and the resulting denial of her asylum and withholding-of-removal claims. After careful review, we hold (1) that we lack jurisdiction to review the BIA's determination that Diaz-De Rojas's asylum claim was untimely and (2) that the record compels a finding of past persecution and that the BIA did not expressly find that the government rebutted the corresponding presumption of future persecution.

## I

Wendy Diaz-De Rojas, a native and citizen of El Salvador, entered the United States without inspection on September 1, 2014. Just more than a week later, she was interviewed by a border patrol agent. According to the agent's record, Diaz-De Rojas stated that her purpose for entering was "to work and live in the United States" for "eight years." When asked if she feared persecution or torture if she were to be sent back to her country, Diaz De-Rojas responded, "no." She said the same thing when asked if she had any fear about being returned to her home country and when asked if she would be harmed if she were returned to her home country.

2

A couple of weeks after her border-patrol interview, Diaz-De Rojas had a credible-fear interview with an asylum officer. According to the interview form, Diaz stated that her husband, Jairo Rojas, abused her physically and psychologically for many years beginning in 2012, and would continue to do so if she were to return to El Salvador. Diaz also stated that Jairo "forced [her] to have intercourse with him one time" and that at other times she consented "because [she] was afraid that if [she] said no, he would hurt [her]." When asked if she ever reported Jairo to the police, Diaz-De Rojas stated she did not because she "was afraid people might start talking" about her, but she conceded that the police "would have protected [her]" had she reported him. She also noted that she tried to go to the police once, but Jairo threatened her, saying, "if you do that, I will do something worse to you." Finally, when asked why she told officials at the border that she was not afraid to return to El Salvador, Diaz-De Rojas replied that she did not remember them asking her that.

Nearly two years later, in June 2016, Diaz-De Rojas filed an application for asylum, withholding of removal, and relief under the Convention Against Torture, based on membership in a particular social group, specifically "Salvadoran women in a domestic relationship which they cannot leave." In the application, she asserted that she was "abused physically and verbally, and threatened with kidnapping and death numerous times by [her] ex-husband." She further stated

3

that Jairo raped her in 2012 after a heated argument, that she threatened to leave him, and that he told her that she would end up in a coffin if she tried. In the application, when asked if she feared harm or mistreatment if she were to return home, she checked "yes" and explained that she was afraid of being "kidnapped, raped, beaten and killed by [her] ex-husband, in retribution for leaving him." Diaz-De Rojas stated that she was also afraid to return because the police did not protect women who were victims of domestic violence.

In support of her statements, Diaz-De Rojas attached several documents to her application: a letter confirming her participation in domestic-violence counseling group sessions; a psychological evaluation by a mental-health professional; the El Salvador 2016 Human Rights Report, which noted that "[v]iolence against women, including domestic violence, was a widespread and serious problem"; and the El Salvador 2017 Crime & Safety Report, which noted the prevalence of rape and stated that "many victims choose not to participate in the investigation and prosecution of the crime for fear of not being treated respectfully by authorities."

Diaz-De Rojas also attached her divorce decree; a letter from her pastor that stated that he witnessed her relationship with Jairo "became difficult by the year 2012"; a letter from her sister attesting that Diaz-De Rojas told her about Jairo's physical and sexual aggressions and that Diaz-De Rojas had no option but to come

4

to the United States to get away from Jairo's harassment; and a letter from her mother stating that she noticed the physical and psychological abuse that Diaz-De Rojas had suffered from Jairo and that Diaz-De Rojas would not be safe in El Salvador because of him.

At her asylum and withholding-of-removal hearing, Diaz-De Rojas testified that she remembered being asked by the border-patrol agent a few days after her entry if she was afraid to return to El Salvador. When asked why she told the agent "no" she stated that she was afraid and "didn't understand the word in truth." Diaz-De Rojas also testified that she "was ill" when the border agent asked her if she feared persecution or torture if she were sent back to her home country, and that, while she generally understood the meaning of "persecuted or tortured," on "[t]hat day they asked [her she] didn't understand the word." Diaz-De Rojas also recalled telling the border agent that she came to live and work in the United States for a certain number of years.

At the end of the hearing, the IJ issued an oral decision denying Diaz-De Rojas's claims. The IJ first found that her asylum claim was time-barred because she filed it more than a year after entering the United States. The IJ then made an adverse credibility finding based on several inconsistencies between Diaz-De Rojas's testimony and her prior statements (both those given under oath and those found in the psychological report). The inconsistencies included, among others,

5

that Diaz-De Rojas (1) swore to a border-patrol agent that she did not fear harm if she had to return to El Salvador but later testified that she did fear harm; (2) stated in her credible-fear interview that the abuse began in 2012 but testified that the abuse began in 2010; (3) told a psychologist that she slept in a car to escape Jairo's rage but testified that Jairo dragged her to their car and made her sleep there on multiple occasions; and (4) told the asylum officer that the police would have protected her had she gone to them but testified that she did not go to the police because they would not do anything. The IJ also found that, even if Diaz were credible and had suffered past persecution, she was not eligible for withholding of removal or CAT relief because the government had shown that she could avoid persecution by relocating in El Salvador and Diaz had not shown that more likely than not she would be tortured with the acquiescence of the Salvadorian government. Accordingly, it denied her claims for asylum, withholding of removal, and CAT relief.

Diaz-De Rojas appealed the IJ's decision. On appeal, the BIA affirmed the IJ's finding that she was ineligible for asylum and withholding of removal.[1] First, the BIA agreed with the IJ that Diaz-De Rojas was ineligible for asylum because her claim was untimely and she did not establish that extraordinary circumstances excused her late filing. Second, the BIA determined that she did not satisfy her

---

[1] The BIA also noted that Diaz-De Rojas had waived her Convention Against Torture claim by failing to argue it on appeal.

burden of proving eligibility for withholding of removal.  The BIA concluded that there was no clear error in the IJ's adverse credibility finding because the IJ based its findings on specific and cogent reasons, including inconsistencies in Diaz's testimony, statements to border patrol, statements in her credible-fear interview, and statements in her psychological evaluation.  The BIA concluded that these inconsistencies sufficiently supported the IJ's adverse credibility determination, and further found that, without credible testimony, the record was insufficient to establish that she suffered past persecution or would face future persecution on account of a protected ground.

## II

We first consider whether we have jurisdiction over Diaz-De Rojas's asylum claim, which the IJ and BIA dismissed for untimeliness.  Although neither party raised this argument, we are "obligated to inquire into subject-matter jurisdiction sua sponte whenever it may be lacking." *Chacon-Botero v. U.S. Atty. Gen.*, 427 F.3d 954, 956 (11th Cir. 2005) (quoting *Cadet v. Bulger,* 377 F.3d 1173, 1179 (11th Cir. 2004)).

Under the INA, this Court lacks jurisdiction to review the IJ's and BIA's determination that an asylum applicant filed an untimely application and failed to

establish changed or extraordinary circumstances to excuse her untimely filing.[2]

*See* INA § 208(a)(3), 8 U.S.C. § 1158(a)(3).  This is true even when the agencies

reach an alternative finding that the claim also fails on its merits.  *Chacon-Botero*,

427 F.3d at 956–57 (holding that this Court lacked jurisdiction over a petitioner's

asylum claim denied as untimely, even when the agency had found in the

alternative that the claim failed on the merits).

Because the BIA in this case dismissed Diaz-De Rojas's asylum claim as

untimely, we lack jurisdiction to review this claim.  *See* INA § 208(a)(3),

8 U.S.C. § 1158(a)(3).  Consequently, we also lack jurisdiction to review the BIA's

alternative determination that, based on its adverse credibility finding, the asylum

claim fails on the merits.  *Chacon-Botero*, 427 F.3d at 957.  Accordingly, we

dismiss Diaz-De Rojas's asylum claim for lack of jurisdiction.

### III

We next consider Diaz-De Rojas's challenge to the BIA's denial of her

withholding-of-removal claim based on its adverse credibility finding.  We review

the BIA's factual determinations, including credibility determinations, under the

substantial-evidence test.  *Forgue v. U.S. Att'y Gen.*, 401 F.3d 1282, 1286 (11th

Cir. 2005) (citing *D–Muhumed v. United States Att'y Gen.,* 388 F.3d 814, 817–18

---

[2] We review the BIA's decision, except to the extent the BIA expressly adopts the IJ's decision—in which case we also review the IJ's decision.  *Kazemzadeh v. U.S. Att'y Gen.*, 577 F.3d 1341, 1350 (11th Cir. 2009).  Here, the BIA did not expressly adopt the IJ's decision, so we review the BIA's decision.

8

(11th Cir. 2004)).  Under this test, we must affirm the BIA's factual findings if they are "supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Sepulveda v. U.S. Att'y Gen.,* 401 F.3d 1226, 1230 (11th Cir. 2005) (quotation omitted).  In making this determination, "[w]e view the record evidence in the light most favorable to the agency's decision and draw all inferences in favor of that decision." *Adefemi v. Ashcroft*, 386 F.3d 1022, 1027 (11th Cir. 2004) (*en banc*).  Indeed, to reverse the BIA's factual findings "[we] must find not only that the evidence supports a contrary conclusion, but that it compels one." *Farquharson v. U.S. Att'y Gen.*, 246 F.3d 1317, 1320 (11th Cir. 2001) (citation omitted).

Turning to the relevant provisions of the INA, an applicant is entitled to withholding of removal if she can show that her life or freedom would be threatened in the country of removal on account of her race, religion, nationality, membership in a particular social group, or political opinion.  INA § 241(b)(3)(A), 8 U.S.C. § 1231(b)(3)(A).  An applicant bears the burden of showing that she will "more likely than not" suffer persecution on account of being a member of one of these protected groups.  *Sepulveda,* 401 F.3d at 1232.  If an applicant demonstrates past persecution, she is entitled to a rebuttable presumption that she has a well-founded fear of future persecution.  *Ruiz v. U.S. Atty. Gen.*, 440 F.3d 1247, 1257 (11th Cir. 2006).  The government may, in turn, "rebut this

9

presumption if it shows, by a preponderance of the evidence, that either (1) the conditions in the country have changed or (2) the applicant could avoid future persecution by relocating within the country if, 'under all the circumstances, it would be reasonable to expect the applicant to do so.'" *De Santamaria v. U.S. Atty. Gen.*, 525 F.3d 999, 1012 (11th Cir. 2008) (citing 8 C.F.R. § 208.13(b)(1)(i)).

An applicant must establish eligibility for relief by offering "credible, direct, and specific evidence in the record." *Forgue,* 401 F.3d at 1287 (citation omitted). A credibility determination should be based on the totality of the circumstances, including: (1) "the demeanor, candor, or responsiveness of the applicant"; (2) the "inherent plausibility" of the applicant's account; (3) the consistency between the applicant's statements; (4) the "internal consistency" of each statement; and (5) the consistency of the applicant's statements with other record evidence.[3]  INA § 240(c)(4)(C), 8 U.S.C. § 1229a(c)(4)(C).  "Indications of reliable testimony include consistency on direct examination, consistency with the written application, and the absence of embellishments." *Ruiz*, 440 F.3d at 1255.  In contrast, an adverse credibility determination may be based on inconsistencies,

---

[3] We have faulted, for example, an IJ's reliance *solely* on inconsistencies between an applicant's testimony at her airport interview and her subsequent testimony, because the IJ failed to consider the circumstances in which the airport statements were made. *Tang v. U.S. Att'y Gen.*, 578 F.3d 1270, 1279 (11th Cir. 2009).  In considering whether statements qualify as contradictions rather than mere elaboration, this Court has instructed that an IJ should consider that an alien in the airport is not represented by counsel and may be intimidated by police questioning, particularly if the alien was a victim of government abuse. *Id*.

inaccuracies, or falsehoods, regardless of whether they relate to the "heart" of an applicant's claim. INA § 240(c)(4)(C), 8 U.S.C. § 1229a(c)(4)(C).

If the BIA finds an applicant not credible, it must make an explicit adverse credibility finding and offer "specific, cogent reasons" for its finding. *Shkambi v. U.S. Atty. Gen.*, 584 F.3d 1041, 1049 (11th Cir. 2009) (internal citation omitted). The BIA need not accept an applicant's proffered explanation for inconsistencies in her testimony if the explanation does not compel a finding that the applicant was credible. *Id*. at 1050. Once the BIA has made an adverse credibility finding, the applicant bears the burden of showing that the finding was not supported by "specific, cogent reasons or was not based on substantial evidence." *Forgue*, 401 F.3d at 1287.

If an alien is found credible, her testimony may be sufficient, without corroboration, to carry her burden of proof in establishing eligibility for relief from removal. *Id*. "Conversely, an adverse credibility determination alone may be sufficient to support the denial of an asylum application." *Id.* An adverse credibility determination does not, however, eliminate the factfinder's duty to consider other evidence an applicant submits. *Id.*

The BIA in this case provided specific, cogent reasons for its adverse credibility finding, including several inconsistencies in Diaz-De Rojas's testimony, statements to border patrol, statements in her credible-fear interview, and

11

statements in her psychological evaluation.[4]  Specifically, the BIA noted that—in direct contradiction to the testimony she gave in her credible-fear interview—Diaz-De Rojas told border patrol that she had no fear of persecution or torture if she returned to El Salvador and that she came to the United States only to work and live for eight years.  *See* INA § 240(c)(4)(C), 8 U.S.C. § 1229a(c)(4)(C).  The BIA found her explanation that she did not understand the words "torture or persecution" unpersuasive, given her other answers to border patrol and her college-level education.  The BIA also identified Diaz's inconsistent testimony regarding the length and severity of her abuse, including the year in which it began and whether her husband forced her to sleep in their car or whether she voluntarily slept there to avoid his rage.[5]

While these inconsistencies are subtle rather than blatant, the INA instructs that an adverse credibility determination may be based on inconsistencies, regardless of whether they relate to "the heart of an applicant's claim."  INA § 240(c)(4)(C), 8 U.S.C. § 1229a(c)(4)(C).  We may not reverse the BIA's factual

---

[4] The parties disagree about whether the BIA improperly considered as inconsistent Diaz-De Rojas's testimony concerning how many times she was forcibly raped despite saying "no" and how many times she instead consented out of fear.  Because we conclude that the BIA's decision is sufficiently supported by other inconsistencies, we need not consider whether the BIA properly relied on supposed inconsistencies in Diaz-De Rojas's rape-related statements.

[5] The IJ also noted several inconsistencies in Diaz-De Rojas's testimony concerning her decision not to go to the police, including that she initially noted that she did not go to the police because they would not have done anything, but told the asylum officer that the police would have protected her had she gone to them.

findings simply because "the evidence supports a contrary conclusion"; rather, we may reverse only if the evidence truly "compels" a contrary conclusion. *Farquharson*, 246 F.3d at 1320. That is not the case here. Although the decision is a close call, "the mere fact that the record may support a contrary conclusion is not enough to justify a reversal." *Ruiz*, 440 F.3d at 1255.

The BIA did not explain, however, its basis for finding that "[w]ithout credible testimony, the record evidence is insufficient to establish that the respondent suffered past persecution or will face future persecution on account of a protected ground." The letters from Diaz-De Rojas's mother, sister, and pastor support the conclusion that she was in a toxic marriage in El Salvador and that her ex-husband frequently abused her. And the country reports support the conclusion that spousal abuse against women is socially acceptable in El Salvador. Combined, these items compel a finding of past persecution, which gives rise to a rebuttable presumption of future persecution. *See* 8 C.F.R. § 208.16(b)(1)(i); *Ruiz*, 440 F.3d at 1257. Although the record also indicates changes in circumstances that could perhaps rebut the presumption of future persecution, the BIA's opinion does not find that the government carried this burden, and indeed, appears to rest on a finding that there was no showing of past persecution in the first place.

In sum, we uphold the BIA's adverse credibility finding because, although the record as a whole could be read to support a finding of credibility, it does not

compel such a finding.  But because the record compels a finding of past persecution, and because the BIA did not expressly find that the government rebutted the corresponding presumption of future persecution, we must grant the petition in part and remand to the BIA for consideration of whether Diaz-De Rojas has shown that she is eligible for withholding of removal despite the adverse credibility finding.

## IV

Because we lack jurisdiction to review the BIA's timeliness determination, we dismiss the portion of Diaz-De Rojas's appeal relating to her petition for asylum.  But because the BIA's decision does not address whether the government rebutted the presumption that Diaz-De Rojas will suffer future persecution, we grant the petition in part and remand to the BIA for further consideration of her withholding of removal claim.

**PETITION DISMISSED IN PART AND GRANTED IN PART.**