[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 19-14213
Non-Argument Calendar
_____

Agency No. A205-353-277

WALTER ALBERTO GARCIA,

                                                            Petitioner,

versus

U.S. ATTORNEY GENERAL,

                                                            Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(October 14, 2020)

Before GRANT, LUCK and BLACK, Circuit Judges.

PER CURIAM:

Walter Alberto Garcia, a native and citizen of Nicaragua, petitions for review of an order of the Board of Immigration Appeals (BIA) affirming the Immigration Judge (IJ)'s denial of his application for asylum and withholding of removal.[1]  Garcia argues the BIA and IJ erred in finding his testimony was not credible or corroborated by sufficient evidence.  After review,[2] we deny the petition.

## I.  DISCUSSION

An asylum applicant must meet the definition of a refugee under the Immigration and Nationality Act (INA).  8 U.S.C. § 1158(b)(1).  The INA defines a refugee as "any person who is outside any country of such person's nationality . . . and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution" on account of a protected ground, including political opinion.  *Id.* § 1101(a)(42)(A).  The standard for withholding of removal

---

[1] The BIA explained the IJ denied Garcia's asylum claim as time-barred but did not expressly affirm the denial of asylum on this basis or address Garcia's changed circumstances argument.  Instead, the BIA affirmed the denial of asylum and withholding of removal based on an adverse credibility finding.  We therefore reject the government's contention Garcia has abandoned his asylum claim or that we lack jurisdiction to review it.

[2] We review factual findings under the highly deferential substantial evidence test, which requires us to "view the record evidence in the light most favorable to the agency's decision and draw all reasonable inferences in favor of that decision." *Adefemi v. Ashcroft*, 386 F.3d 1022, 1026-27 (11th Cir. 2004) (en banc).  Because the BIA agreed with the IJ's reasoning, we review the decisions of both the BIA and IJ to the extent of the agreement. *See Kazemzadeh v. U.S. Att'y Gen.*, 577 F.3d 1341, 1350 (11th Cir. 2009).

is more stringent, requiring an applicant to show he would "more likely than not" be persecuted or tortured upon return to his country because of a protected ground. *Sepulveda v. U.S. Att'y Gen.*, 401 F.3d 1226, 1232 (11th Cir. 2005). An applicant's credible testimony may be sufficient to sustain the burden of proof for asylum or withholding of removal without corroboration. *See* 8 C.F.R. §§ 208.13(a), 208.16(b). Conversely, the denial of relief "can be supported solely by an adverse credibility determination, especially if the alien fails to produce corroborating evidence." *Lyashchynska v. U.S. Att'y Gen.*, 676 F.3d 962, 967 (11th Cir. 2012). Where an applicant produces evidence of persecution other than his testimony, "the IJ must consider that evidence, and it is not sufficient for the IJ to rely solely on an adverse credibility determination in those instances." *Forgue v. U.S. Att'y Gen.*, 401 F.3d 1282, 1287 (11th Cir. 2005).

Under the REAL ID Act of 2005, credibility determinations are evaluated under the totality of the circumstances and may be based on "the demeanor, candor, or responsiveness of the applicant," the plausibility of the applicant's account, the consistency of the applicant's written and oral statements considering the circumstances under which they were made, "the internal consistency of each such statement, the consistency of such statements with other evidence of record . . . and any inaccuracies or falsehoods in such statements." 8 U.S.C. §§ 1158(b)(1)(B)(iii), 1231(b)(3)(C). An adverse credibility finding must be

3

supported by "specific, cogent reasons," and once such finding is made, the burden is on the applicant to show the decision was not supported by such reasons or based on substantial evidence. *Forgue*, 1201 F.3d at 1287.

*1. Credibility*

The BIA found no clear error in the IJ's adverse credibility finding, agreeing Garcia's testimony concerning his political involvement and alleged persecution by the Sandinista regime was "general, vague, confusing, and inconsistent." Despite Garcia's arguments to the contrary, substantial evidence supports this finding, including Garcia's failure to adequately explain certain events, inconsistencies in his testimony, and his inability to provide sufficient detail regarding his political activities in Nicaragua. *See Ruiz v. U.S. Att'y Gen.*, 440 F.3d 1247, 1257 (11th Cir. 2006) (stating we must affirm if the BIA's decision is "supported by reasonable, substantial, and probative evidence on the record considered as a whole") (quotation marks omitted).

The BIA and IJ found Garcia had failed to explain why his brother Francisco had been killed by Sandinista supporters in 1996, what actions caused his other brother Rolando to flee Nicaragua for the United States soon after, and why, if his brothers had been persecuted because of their opposition to the Sandinistas, Garcia himself was not targeted until 2009. Although Garcia testified Francisco was killed in an ambush while delivering supplies to anti-Sandinistas, the IJ found

4

Garcia failed to provide sufficient details concerning the nature and extent of Francisco's political involvement, which would explain why Francisco had been targeted. Moreover, the IJ found it implausible Garcia did not have problems with the Sandinistas until 2009, even though he testified he was in the truck with his brother during the ambush. Garcia argues his persecution began when he created an anti-Sandinista flyer in 2009, but this explanation does not address why Garcia was not targeted before then, or the other deficiencies the BIA and IJ identified.

The BIA and IJ also found Garcia failed to explain what the flyer meant, why its message was anti-Sandinista, or why, given Garcia's testimony the flyer was motivated by Francisco's death and Rolando's flight from Nicaragua, Garcia had waited so long to create it. Garcia contends the IJ gave no weight to his "own opposition to the government," and failed to give him an adequate opportunity to explain the meaning of the flyer. Nevertheless, this does not explain the delay in creating the flyer to the extent it was linked to what happened to his brothers. *See Chen v. U.S. Att'y Gen.*, 463 F.3d 1228, 1233 (11th Cir. 2006) (noting tenable explanation for implausible aspect of testimony does not necessarily compel reversal). Further, the record shows Garcia was given the opportunity to answer specific questions about the flyer and provide details about its meaning but was unable to do so.

The BIA and IJ also noted several inconsistencies regarding the distribution of the flyer. Garcia indicated in his asylum application he had created the flyer as part of his work as a designer for the newspaper La Prensa and "designed one page on the newspaper," but testified before the IJ he designed the flyer on his own and distributed it at bus stops. In addition, Garcia stated in his asylum application he received a notice from the government demanding a retraction, but testified before the IJ the notice was sent to his superior at La Presna. Garcia argues he was not given an opportunity to explain these discrepancies but does not indicate what caused them. In addition, the record shows the Government asked about the discrepancy as to who received the notice on cross-examination.

The BIA and IJ also found Garcia failed to provide sufficient details about his work as a route leader for the Liberal Constitutional Party (PLC) in 1997 and 2002. Garcia contends he explained this role involved propaganda and publicity and argues the IJ should have asked for further details. However, the record shows when the IJ asked Garcia to describe his role, he provided only a general answer.

Though Garcia challenges several other inconsistencies the BIA and IJ relied on, the record as a whole does not compel reversal. *See Ruiz*, 440 F.3d at 1255 (providing a finding of fact will be reversed under the substantial evidence test only when the record compels reversal, not merely because the record may support a contrary conclusion). The BIA and IJ found an inconsistency between Garcia's

6

testimony that he worked for the Nicaraguan presidency for three years and a letter from a PLC leader, Guillermo Callejas, stating he worked there from 2004 to 2006. It is unclear whether these timeframes are actually inconsistent, as Garcia does not explain specifically when his employment began and ended, but we are not compelled to reverse on this basis, given the other inconsistencies and implausible aspects of Garcia's testimony the BIA and IJ relied on.

The BIA and IJ also found neither the Callejas letter nor another letter from the former Nicaraguan president's private secretary confirmed Garcia worked as an official government employee. Notably, the private secretary's letter was requested in 2012, but dated 2005, and spoke only to Garcia's moral character. While Garcia now contends this letter must be read in conjunction with another from the private secretary attached to his asylum application and confirming his official employment, he did not raise this argument before the BIA and could not explain at his hearing why the letter was dated 2005. Thus, the BIA and IJ's conclusions about the letters do not compel reversal either.

Finally, the BIA and IJ noted an inconsistency between Garcia's testimony that he was beaten and released by Sandinista supporters and his claim Sandinistas generally make their enemies disappear. Garcia argues it was error for the agency to conclude his persecutors would not kill him in the future because they had not done so in the past. To the extent this finding is based on improper speculation,

7

however, the other deficiencies in Garcia's testimony support the conclusion he was not credible. *See Tang v. U.S. Att'y Gen.*, 578 F.3d 1270, 1278 (11th Cir. 2009) (providing reversal is appropriate where adverse credibility determination is based solely on speculation and conjecture).

2. *Corroboration*

Substantial evidence also supports the finding Garcia failed to sufficiently corroborate his testimony. *See Yang v. U.S. Att'y Gen.*, 418 F.3d 1198, 1201 (11th Cir. 2005) ("The weaker an applicant's testimony . . . the greater the need for corroborative evidence."). The BIA and IJ observed Garcia had submitted no testimony from his brother Rolando, even though Rolando had been granted residency in the United States and lived with Garcia. Further, the BIA noted although Garcia provided medical records showing he, his girlfriend, and his father received treatment for injuries, the records did not indicate these injuries were inflicted by Sandinista supporters. Finally, the BIA found two letters Garcia submitted failed to corroborate his testimony. One stated only that Rolando was a member of the Nicaraguan Resistance and had been forced to leave the country, without providing details about his specific activities. The other, written by an individual from whom Garcia had sought protection, briefly stated Garcia and his family had been victims of attacks by Sandinistas, acknowledging attempts had been made on Garcia's life, one of Garcia's brothers had been killed, and Garcia's

8

father had been shot, but provided no details about these incidents.  On this record, and in the absence of any other corroborating evidence identified by Garcia, substantial evidence supports the BIA and IJ's finding Garcia failed to corroborate his testimony.

## II.  CONCLUSION

For the reasons above, substantial evidence supports the BIA and IJ's finding Garcia's testimony was not credible or corroborated by sufficient evidence. Accordingly, we deny Garcia's petition.

**PETITION DENIED.**