[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 20–10176
Non-Argument Calendar
_____

Agency No. A208-195-523


ESWARD RONALDO GOMEZ ACEITUNO,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(January 4, 2021)

Before NEWSOM, BRASHER, and ANDERSON, Circuit Judges.

PER CURIAM:

The Board of Immigration Appeals denied Esward Ronaldo Gomez

Aceituno's application for asylum, 8 U.S.C. § 1158(b)(1)(A), and for withholding

of removal under the Immigration and Nationality Act, 8 C.F.R. § 208.16(c)(2). Gomez Aceituno petitioned this Court for review. After considering the briefs, this Court denies the petition.

## I. BACKGROUND

In December 2015, Gomez Aceituno—a citizen and native of Guatemala—attempted to enter the United States without valid entry documents, violating INA § 212(a)(7)(A)(i)(I). 8 U.S.C. § 1182(a)(7)(A)(i)(I). He applied for asylum and withholding of removal and had an individual merits hearing in Tacoma, Washington. At the merits hearing, Gomez Aceituno testified that his father had been a Guatemalan police officer who investigated gangs and corrupt politicians. Around eight years earlier, his father had been killed after receiving threats from former police officers who he had arrested for corruption. Gomez Aceituno did not know exactly what the threats were, who had killed his father, or why they had killed him.

Around four years later, Gomez Aceituno's maternal uncle received threats for unknown reasons, and an unknown person killed him. "[S]ome police" then "threatened" both of Gomez Aceituno's older brothers for unknown reasons, causing one of the brothers to leave Guatemala the next year. Another year later, an unknown

2

person shot at the other older brother's house, prompting that brother to leave Guatemala as well.

After yet another year passed—now around seven and a half years after the death of Gomez Aceituno's father—Gomez Aceituno went to a concert. Walking home around two in the morning, he was assaulted by five unknown members of an unidentified gang. The gang members punched him in the face, kicked him, threatened him, and robbed him. They did not mention his family. About a month later, an unknown person called Gomez Aceituno, threatening him with death unless he paid the caller 5,000 quetzals. Gomez Aceituno did not recognize the caller's voice, and the caller did not mention his father. But Gomez Aceituno believed that it was the same "individual that killed [his] father and [his] uncle and the one[] that threatened [his] brothers" because the caller had "called [him] by [his] name, and it's logic."

Shortly after that call, Gomez Aceituno left Guatemala. His younger brother, girlfriend, and soon-to-be-born child, all remained and continue to live in Guatemala. Nothing in the record suggests that they have experienced any mistreatment since Gomez Aceituno left, although at least until April 2016, they did not "go out very much." Gomez Aceituno admitted that he was never "harmed . . . by the police or the government." He also conceded that neither the police nor the government had ever threatened him. When asked who would seek to harm him if

3

he returned to Guatemala, Gomez Aceituno replied, "The problem is that I don't know who it is."

The immigration judge found that Gomez Aceituno had not shown that either the "mugg[ing]" or the attempted extortion were prompted by his family membership or an imputed political opinion and held that he "[could] []not grant his Applications." At that point, Gomez Aceituno's attorney asked for a continuance so that she could present more evidence, specifically an affidavit from Gomez Aceituno's younger brother still in Guatemala and the live testimony of Gomez Aceituno's older brother.

Gomez Aceituno then went to live in Savannah, Georgia, with his family, prompting an agreed-upon transfer of the case to Atlanta, Georgia. Almost two years after the initial hearing, Gomez Aceituno still had not submitted the additional evidence. The immigration judge in Atlanta reviewed the record and denied Gomez Aceituno's applications for asylum and withholding of removal. He first found that Gomez Aceituno's testimony was credible. He then held that the assault and attempted extortion did not rise to the level of persecution, that membership in his family did not count as membership in a statutorily protected "particular social group," that he had not established that any political opinion had been imputed to him, that he had not shown a nexus between the alleged persecution and a protected ground, that he had not met his burden of proving an objective well-founded fear of

4

future persecution, and that he had not demonstrated that Guatemala's government was unwilling or unable to protect him. Because Gomez Aceituno failed to show that he was eligible for asylum, the immigration judge also denied his application for withholding of removal.

Gomez Aceituno appealed to the BIA, which adopted and affirmed the immigration judge's decision. The BIA specifically found that Gomez Aceituno's family was not a "cognizable particular social group," and he had not shown that either the assault or extortion were because of his family membership or an imputed political opinion. It also reiterated that because he failed to show asylum eligibility, he necessarily failed to meet the higher burden for withholding of removal. Gomez Aceituno timely petitioned this Court for review.

## II. STANDARD OF REVIEW

We review the BIA's legal conclusions *de novo*, *Perez-Zenteno v. U.S. Att'y Gen.*, 913 F.3d 1301, 1306 (11th Cir. 2019), and its factual findings under the "highly deferential substantial evidence test," *Adefemi v. Ashcroft*, 386 F.3d 1022, 1026–27 (11th Cir. 2004) (en banc). To the extent that the BIA expressly adopts the immigration judge's decision, we review the immigration judge's reasoning as well, applying the same standards of review. *Juene v. Att'y Gen.*, 810 F.3d 792, 799 (11th Cir. 2016). Under the "substantial evidence test," factual findings "are conclusive unless the record demonstrates that 'any reasonable adjudicator would be compelled

5

to conclude the contrary.'" *Fahim v. U.S. Att'y Gen.*, 278 F.3d 1216, 1218 (11th Cir. 2002) (quoting 8 U.S.C. § 1252(b)(4)(B)).

### III. DISCUSSION

The INA gives the Attorney General discretion to grant asylum to applicants who qualify as "refugee[s]" under 8 U.S.C. § 1101(a)(42). The applicant bears the burden of showing his refugee status. 8 U.S.C. § 1158(b)(1)(B)(i). To establish that status, the applicant must present "credible, direct, and specific evidence in the record," *Rodriguez Morales v. U.S. Att'y Gen.*, 488 F.3d 884, 890 (11th Cir. 2007), establishing that "(1) he was persecuted in the *past* 'on account of race, religion, nationality, membership in a particular social group, or political opinion' (together, 'protected grounds'), or (2) he has a 'well-founded fear' of persecution in the *future* 'on account of' any of his protected grounds," *Lingeswaran v. U.S. Att'y Gen.*, 969 F.3d 1278, 1286 (11th Cir. 2020) (first citing 8 U.S.C. §§ 1101(a)(42)(A), 1158(b)(1); and then citing 8 C.F.R. § 208.13(a), (b)).

Importantly, the applicant must show that a statutorily protected ground "was or will be at least one central reason for persecuting the applicant," 8 U.S.C. § 1158(b)(1)(B)(i), which means that a statutorily protected ground "cannot be incidental, tangential, superficial, or subordinate to another reason for harm," *In re J-B-N- & S-M-*, 24 I&N Dec. 208, 214 (BIA 2007). In other words, to be eligible for asylum relief, an applicant must prove that he was or will be persecuted "*because*

6

*of*" a protected ground. *I.N.S. v. Elias-Zacarias*, 502 U.S. 478, 483 (1992). Whether an applicant has established that nexus is a factual finding that this Court reviews for substantial evidence. *See Rodriguez Morales*, 488 F.3d at 890 ("To warrant reversal of the BIA's finding that an alien has failed to demonstrate a sufficient nexus between his political opinion and his alleged persecution, we must be compelled to find that the alien will be persecuted '*because of*' his political opinion." (quoting *Elias-Zacarias*, 502 U.S. at 483)).

Gomez Aceituno argues that he was persecuted because of two protected grounds: (1) his membership in a particular social group and (2) his father's anti-corruption stance, imputed to him. But even assuming Gomez Aceituno has established past or likely future persecution, the record does not compel "any reasonable adjudicator" to conclude that Gomez Aceituno was or will be targeted because of his family membership or his father's anti-corruption efforts.

As to past persecution, the record does not compel the conclusion that it was because of a protected ground. Gomez Aceituno argues that, because his brothers and other family members were allegedly persecuted because of a protected ground, it follows that he was as well. But Gomez Aceituno testified to only two incidents of threat or violence directed at him in the more than seven years after his father's death. In the first incident, he was assaulted and robbed while walking home from a concert at two in the morning. The assailants were members of a gang, but Gomez

7

Aceituno could not identify the gang or any of the individuals. The assailants never mentioned his father, his family, or any motivation for their actions. Nor did the extorter in the second incident mention Gomez Aceituno's father or his family. The immigration judge found that "the motive of the gang members was criminal activity" instead of a protected ground. And evidence in the record establishes that violence and crime—specifically extortion—are prevalent in Guatemala untied to persecutory motives. *See Ruiz v. U.S. Att'y Gen.*, 440 F.3d 1247, 1258 (11th Cir. 2006) ("[E]vidence that either is consistent with acts of private violence . . . , or that merely shows that a person has been the victim of criminal activity, does not constitute evidence of persecution based on a statutorily protected ground." (citation omitted)). Because the record does not compel "any reasonable adjudicator" to conclude that general criminal aims did not centrally motivate the assailants and the extorter, this Court cannot disregard that finding.

Nor does the record compel us to find a sufficient nexus between either Gomez Aceituno's family membership or imputed political opinion and potential future persecution. Gomez Aceituno left Guatemala nearly five years ago, and he could not identify who he thought would persecute him if he returned to Guatemala. His girlfriend, child, and brother remain in Guatemala, and there is no evidence in the record that they have been the victims of any incidents since Gomez Aceituno left. *See Ruiz*, 440 F.3d at 1259 (holding that petitioner's argument that he would be

8

persecuted because of a protected ground shared by his family was undercut because his family remained unharmed in petitioner's home country). Accordingly, substantial evidence supports the immigration judge's factual finding that neither protected ground would motivate future persecution.

Turning to Gomez Aceituno's withholding-of-removal claim, because Gomez Aceituno is not eligible for asylum, neither is he entitled to withholding of removal. A person shall not be removed to a country if his life or freedom would be threatened on account of one of the five protected grounds. 8 U.S.C. § 1231(b)(3). He must show that it is "more likely than not [he] will be persecuted . . . upon being returned to [his] country." *Sepulveda v. U.S. Att'y Gen.*, 401 F.3d 1226, 1232 (11th Cir. 2005) (quotation omitted). If an applicant is unable to meet the lower burden for asylum relief, he is generally precluded from establishing eligibility for withholding of removal. *Najjar*, 257 F.3d at 1293, 1303–04. Gomez Aceituno's failure to establish eligibility for asylum precludes relief on his withholding-of-removal claim.[1]

## IV. CONCLUSION

Gomez Aceituno's petition for review is **DENIED**.

---

[1] Gomez Aceituno's original Convention Against Torture ("CAT") claim is not before this Court. He did not present that claim to the BIA, *Amaya-Artunduaga v. U.S. Att'y Gen.*, 463 F.3d 1247, 1250 (11th Cir. 2006) (explaining that failure to exhaust administrative remedies bars this Court from hearing the claim), and he did not present any argument related to CAT before this Court, *Sepulveda*, 401 F.3d at 1228 n.2 (explaining that issues not briefed are abandoned).