[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
NOV 17, 2008
THOMAS K. KAHN
CLERK

_____

No. 08-12210
Non-Argument Calendar

_____

Agency Nos. A99-924-945
A99-924-946

JESUS MANUEL SAYOL-HERNANDEZ,
LUIMAR YELITZA NAHR-YAYA,
LUIS MANUEL SAYOL,
MIGUEL VICENTE SAYOL-NAGR,

Petitioners,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

**(November 17, 2008)**

Before BLACK, CARNES and BARKETT, Circuit Judges.

PER CURIAM:

Jesus Manuel Sayol-Hernandez, his wife Luimar Yelitza Nahr-Yaya, and their two children, all natives and citizens of Venezuela, seek review of the BIA's order affirming the IJ's removal order and denial of their claims for asylum and withholding of removal under the Immigration and Nationality Act, 8 U.S.C. §§ 1158 and 1231, and relief under the Convention Against Torture (CAT), 8 C.F.R. § 208.16(c). Sayol contends that his family is eligible for asylum, despite the fact that he failed to apply for it within a year of entering the United States, because he meets the extraordinary circumstances exception to that rule. He further contends that his family is entitled to asylum and withholding of removal because of past persecution and a well-founded fear of future persecution should he return to Venezuela. Finally, Sayol argues that the IJ failed to give adequate consideration to his CAT claim.

## I.

We review only the BIA's decision, but to the extent that the BIA adopts the IJ's reasoning, we review the IJ's decision as well. Al Najjar v. Ashcroft, 257 F.3d 1262, 1284 (11th Cir. 2001). Here, although the BIA did not expressly adopt the IJ's decision, the BIA relied on the IJ's reasoning. Accordingly, we review both decisions. See id.

We review the BIA and IJ's determinations using the substantial evidence test, which requires us to uphold their decisions if they are "supported by

2

reasonable, substantial, and probative evidence on the record considered as a whole." Rodriguez Morales v. United States Att'y Gen., 488 F.3d 884, 890 (11th Cir. 2007) (quoting INS v. Elias-Zacarias, 502 U.S. 478, 481, 112 S. Ct. 812, 815 (1992)). "To reverse the [BIA's] fact findings, we must find that the record not only supports reversal, but compels it." Mendoza v. United States Att'y Gen., 327 F.3d 1283, 1287 (11th Cir. 2003); see also Elias-Zacharias, 502 U.S. at 481 n.1, 112 S. Ct. at 815 n.1.

## II.

Sayol first contends that his family qualifies for asylum under the Immigration and Nationality Act, 8 U.S.C. § 1158. Any alien who arrives in the United States may apply for asylum; however, under 8 U.S.C. § 1158(a)(2)(B), the alien must "demonstrate[] by clear and convincing evidence that the application has been filed within 1 year after the date of the alien's arrival in the United States." The law provides an exception to this if the alien can satisfy the Attorney General that changed or extraordinary circumstances prevented filing within the one-year deadline. See 8 U.S.C. § 1158(a)(2)(D).

Sayol argues that, although he arrived in the United States in 2003 and filed for asylum in 2006, he meets the "extraordinary circumstances" exception to the one-year rule. The IJ and BIA disagreed with Sayol and denied his application for asylum as untimely. This Court lacks subject-matter jurisdiction to review those

3

decisions.

"No court shall have jurisdiction to review any determination of the Attorney General" regarding the timeliness of an alien's application or whether an alien qualifies for an exception to the one-year deadline. 8 U.S.C. § 1158(a)(3); see also Chacon-Botero v. United States Att'y Gen., 427 F.3d 954, 956 (11th Cir. 2005 (holding that 8 U.S.C. § 1158(a)(3) removes our jurisdiction to review findings concerning the timeliness of an alien's application or the existence of extraordinary circumstances).

We do not have jurisdiction to evaluate the IJ or BIA's finding that Sayol's asylum application was untimely. Thus, we dismiss the petition as to Sayol's claim for asylum.

**III.**

Sayol contends that his family is entitled to withholding of removal under 8 U.S.C. § 1231(b)(3)(A). An alien can avoid removal if the Attorney General decides that the "alien's life or freedom would be threatened in [his] country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A). An alien bears the burden to show that it is "more likely than not []he will be persecuted or tortured upon being returned to [his] country." Sepulveda v. United States Att'y Gen., 401 F.3d 1226, 1232 (11th Cir. 2005) (quotation omitted).

4

Sayol, a machinist by trade, testified that between 1992 and 1999 he also worked for the Venezuelan military as an undercover investigator. Sayol stated that he investigated individuals who opposed the Venezuelan government, including Hugo Chavez. His duties included gathering information, taking pictures and videos, and acting as a driver and bodyguard for his superiors. Sayol stated that some of the individuals he investigated were arrested, but that he was unaware of what happened to them after that. After Chavez was elected to the presidency in 1998, Sayol quit working for the military because he believed that the new government had learned of his activities in support of the old one. Sayol testified that he began receiving threatening telephone calls, possibly from the "Bolivarian Circles" group, in 1999, though his wife testified that the threats began in 2002. In response to the calls, Sayol claimed to have moved his family several times within Caracas, but his wife stated that they never moved before coming to the United States in 2003.

Sayol testified that in late 2002 an unknown gunman fired shots at his car after he and his son attended a baseball game. Sayol also testified that he worked as a security guard at a number of opposition marches in 2002 and was hit with sticks or stones, causing minor injuries. After these incidents, Sayol fled with his wife and children to the United States, leaving behind a number of other close relatives who he testified have not been harmed. At the hearing before the IJ,

5

Sayol offered background materials on Venezuela and identification documents that indicate that Sayol had worked for the military.

The IJ and BIA ruled that Sayol's testimony was not credible because of discrepancies between his testimony and his wife's, and because his stated role in the military was too vague. Sayol has waived any challenge to the adverse credibility determination in this case by failing to argue the issue on appeal. See Sepulveda, 401 F.3d at 1228 n.2 (noting that when a party fails to offer argument on an issue, it is abandoned).

While credible testimony alone can be sufficient to establish eligibility for withholding of removal, "[c]onversely, an adverse credibility determination alone may be sufficient to support [its] denial." Ruiz v. United States Att'y Gen., 440 F.3d 1247, 1255 (11th Cir. 2006) (quotation omitted). But "[i]f an applicant produces evidence beyond his own testimony, it is not sufficient for the IJ to rely solely on an adverse credibility determination in those instances." Id.; see also Yang v. United States Att'y Gen., 418 F.3d 1198, 1201 (11th Cir. 2005) ("The weaker the applicant's testimony, however, the greater the need for corroborative evidence.").

In this case, the corroborative evidence is not compelling. Sayol's burden of proof is to demonstrate that it is more likely than not that he will be persecuted or tortured if returned to Venezuela. See Sepulveda, 401 F.3d at 1232. Though Sayol

produced documents establishing that he worked for the Venezuelan military, there is no evidence beyond Sayol's testimony that he investigated or participated in the alleged investigation of Chavez. Further, the 2006 State Department Country Report for Venezuela indicates that there have been no reports of the Venezuelan government or its agents engaging in politically motivated killings. The Country Report is supported by the fact that Sayol's parents, sister, brother, and nephew still live in Venezuela and have not been harmed.

In light of the IJ's finding that Sayol's testimony was not credible and the weakness of the corroboration for Sayol's claims, substantial evidence supports the IJ's and BIA's denial of withholding of removal. Accordingly, we deny the petition as to this issue.

**IV.**

Lastly, Sayol contends that his family is entitled to relief under the Convention Against Torture, 8 C.F.R. § 208.16(c)(2). Specifically, Sayol argues that this Court remands cases where the IJ and BIA have failed to make adequate findings or give reasoned consideration to the evidence that the alien has offered under the CAT. See, e.g., Mezvrishvili v. United States Att'y Gen., 467 F.3d 1292, 1297 (11th Cir. 2006) (vacating BIA and IJ findings that failed to offer "a reasoned decision in consideration of [the petitioner's] credible testimony").

Sayol, however, failed to argue to the BIA that the IJ's findings were not

7

based on reasoned consideration. In fact, Sayol did not raise the CAT issue at all in his appeal to the BIA. "[W]e lack jurisdiction to consider claims that have not been raised before the BIA." <u>Sundar v. INS</u>, 328 F.3d 1320, 1323 (11th Cir. 2003). Accordingly, we dismiss the petition as to the issue of relief under the CAT.

**DENIED IN PART, DISMISSED IN PART.**