[DO NOT PUBLISH]


IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-14603
Non-Argument Calendar
_____

Agency No. A087-501-681


NANCY WANJIRU IGAMBA,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.


_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(January 10, 2017)

Before HULL, JULIE CARNES and JILL PRYOR, Circuit Judges.

PER CURIAM:

Nancy Wanjiru Igamba, a native and citizen of Kenya, seeks review of the Board of Immigration Appeals' ("BIA") final order adopting and affirming the Immigration Judge's ("IJ") denial of her application for asylum, withholding of removal, and Convention Against Torture ("CAT") relief.  After review, we dismiss in part and deny in part the petition for review.

## I.  BACKGROUND FACTS

### A.    Asylum Application

In May 2008, Igamba entered the United States on a B2 visitor's visa, with authorization to remain until November 2008.  In May 2009, Igamba filed an application for asylum and withholding of removal under the Immigration and Nationality Act ("INA") and for relief under CAT.

Igamba claimed she had suffered past persecution and feared future persecution by the Mungiki, a quasi-religious criminal organization in Kenya that is predominantly made up of members of the Kikuyu ethnic group.  Igamba alleged that the Mungiki had targeted her for persecution, including rape, genital mutilation, and murder, because (1) she was a Christian woman of Kikuyu ethnicity who was uncircumcised, unmarried, and independent, and (2) she had formerly worked for the Kenyan police force and was wrongly believed by the Mungiki to have been involved in the Kenyan police's extrajudicial murder of a Mungiki leader, George Waweru.

2

According to Igamba's affidavit, in February 2008, six months after Waweru was killed in August 2007, three unknown men approached her at a bus stop. One of the men identified himself as Mungiki, accused her of being involved in Waweru's killing, and threatened to circumcise her. The man warned Igamba that if she reported the encounter, the Mungiki would kidnap, circumcise, rape, and kill her. Igamba did not report the incident. A month later, an unknown man forced his way into Igamba's home and attempted to rape her. When a neighbor knocked on her door, Igamba's assailant fled. Igamba moved into her sister's home in a different neighborhood to avoid further attacks.

Igamba also submitted an affidavit from Dr. Frank Holmquist, a professor of politics with specialization in Kenyan studies. According to Dr. Holmquist: (1) the Mungiki engaged in extortion, intimidation, mutilations, kidnappings, and execution style killings, including brutal revenge killings; (2) the Kenyan government and police had been in a bloody battle with the Mungiki for years; (3) the Mungiki's favored targets included the police, individuals they believe have collaborated with the police against them, and uncircumcised or otherwise "disobedient" Kikuyu women; (4) the Kenyan government was widely believed to have carried out unauthorized killings of suspected Mungiki members; (5) a human rights group suspected George Waweru was kidnapped and killed by the police; (6) the circumstances of Igamba's work for the police and her proximity to Waweru

3

(who was her friend and neighbor) made it reasonable for the Mungiki to believe she was a police spy who had facilitated Waweru's murder; (7) once the Mungiki label an individual a betrayer, members will target the individual for torture and death; and (8) because the Mungiki could carry out their threats anywhere in Kenya, Igamba could not safely live in Kenya

## B.    Immigration Proceedings

In her petition to this Court, Igamba contends only that she demonstrated that she had a well-founded fear of future persecution based on her membership in a particular social group.

Igamba does not challenge the BIA's ruling that she waived her CAT claim and her persecution claims based on her race and religion.  These claims are therefore deemed abandoned.  See Sepulveda v. U.S. Att'y Gen., 401 F.3d 1226, 1228 n.2 (11th Cir. 2005).  In addition, Igamba's petition does not contain any meaningful argument that she demonstrated past persecution based on her membership in a particular social group.  Thus, she has abandoned this claim as well.  See Cole v. U.S. Att'y Gen., 712 F.3d 517, 530-31 (11th Cir. 2013) (explaining that to adequately raise an issue, the party must specifically and clearly identify the issue in the opening brief and devote a discrete portion of his argument to that issue).  Accordingly, we outline the IJ's and the BIA's findings only as they pertain to Igamba's future persecution claim based on her membership in a

4

particular social group.  Both the IJ and the BIA considered her social group to be perceived collaborators with the Kenyan police.  Igamba does not dispute this characterization.

After a hearing at which Igamba testified, the IJ denied Igamba all requested relief.  The IJ found Igamba's documentary and testimonial evidence was credible, but concluded, inter alia, that she had not proven that she had a well-founded fear of persecution on account of a protected ground.  Relevant to this appeal, the IJ concluded that Igamba's proposed social group of "people perceived as collaborators with the Kenyan police," lacked the required "socially visibility" because it "was not shown to be a recognizable segment or group in Kenyan society."

As to the issue of well-founded fear, the IJ discounted Dr. Holmquist's opinion that Igamba could not live safely in Kenya.  The IJ explained that Dr. Holmquist's unsupported conclusion on this point touched on the ultimate issue in the case.  The IJ further pointed out that Igamba did not experience any problems in Kenya once she relocated to a different neighborhood and that five years had passed since Igamba's two encounters with the Mungiki had occurred.  Thus, the IJ found that Igamba did not demonstrate a well-founded fear of future persecution. The IJ further concluded that, because Igamba could not satisfy the lower burden

of proof for asylum, she had not met the higher burden for withholding of removal under the INA.

On appeal to the BIA, Igamba's brief argued that: (1) she belonged to a particular social group; and (2) her fear of future persecution was well-founded. As to the social group issue, Igamba contended that her particular social group was "perceived as a group by society," and that standing up to the Mungiki was an immutable characteristic, as once a Kenyan did this, he or she could not take it back. As to the well-founded fear issue, Igamba argued that the IJ had erred in disregarding information in Dr. Holmquist's affidavit about the violent nature of the Mungiki and that the IJ had failed to explain how a reasonable person in Igamba's situation would not be afraid to return to Kenya given this evidence.

The BIA adopted and affirmed the IJ's decision. As to asylum, the BIA concluded, inter alia, that Igamba could not establish a well-founded fear of future persecution based on a protected category. The BIA determined, among other things, that Igamba's identified group—collaborators with the Kenyan police—lacked "the particularity and social distinction (formerly referred to as social visibility)" necessary to constitute a particular social group. The BIA concluded that Igamba's evidence "of country conditions that members of the general population in Kenya [who] oppose the criminal organization the Mungiki [are] subject to acts of criminality and retribution" did not establish that her proposed

social group met the required criteria.  The BIA concluded that the IJ had properly discounted Dr. Holmquist's affidavit, as Dr. Holmquist did not support his conclusion that Igamba would likely face torture and persecution at the hands of the Mungiki if she was forced to return to Kenya, and he was not made available for testimony or cross-examination in support of his opinion.  Like the IJ before it, the BIA determined that, because Igamba could not establish her asylum eligibility, she also failed to meet the higher burden of proof necessary to establish eligibility for withholding of removal.[1]

## II.  DISCUSSION

In her counseled petition for review, Igamba argues that: (1) the IJ ignored the details of her credited testimony, which established that the Mungiki had targeted her because they believe she was involved in the Kenyan police's killing of Waweru and "[t]his at least makes the case for withholding of removal and relief under the Convention against Torture"; and (2) Dr. Holmquist's affidavit supporting her claim was "detailed and plausible," and the IJ "was not entitled to discount this credible evidence."

For Igamba to obtain a reversal on either an asylum or withholding of removal claim, she must show that the IJ and the BIA erred in concluding that "people perceived as collaborators with the Kenyan police" are not a cognizable

---

[1]Where, as here, the BIA expressly adopts the IJ's decision, we review the decisions of both the BIA and the IJ.  See Al Najjar v. Ashcroft, 257 F.3d 1262, 1284 (11th Cir. 2001).

7

particular social group under the INA.  <u>See</u> INA § 241(b)(3)(A), 8 U.S.C.

§ 1231(b)(3)(A), 8 C.F.R. § 208.13(b).  Igamba's appeal brief to this Court,

however, makes no argument about whether her proposed group qualifies as a

particular social group.  Therefore, she has abandoned any challenge to this ground

for denying her application for asylum and withholding of removal.  <u>See</u>

<u>Sepulveda</u>, 401 F.3d at 1228 n.2.  Further, we need not address whether Igamba's

evidence established that she had an objectively reasonable fear of the Mungiki or

any other issues Igamba's petition for review raises.  Because Igamba does not

dispute the determination of the IJ and the BIA that she failed to show she was a

member of a particular social group within the meaning of the INA, we deny her

petition for review.

   **PETITION DENIED.**