[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 20-13045
Non-Argument Calendar

_____

Agency No. A208-277-892

MANIK CHANDRA DEBNATH,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(September 20, 2021)

Before WILSON, ROSENBAUM and JILL PRYOR, Circuit Judges.

PER CURIAM:

This petition for review presents the question whether the Board of Immigration Appeals ("BIA") gave reasoned consideration to petitioner Manik Debnath's asylum application. Debnath, who is Hindu, sought asylum on the basis that he had suffered past persecution in Bangladesh on account of his religion. In immigration proceedings, Debnath testified that over a several year period before he fled Bangladesh, a group of Muslim individuals regularly extorted money from him and severely beat him several times. Debnath claimed that the attackers targeted him because of his religion and described that, during one of the beatings, the attackers stated they wanted to murder him because he was Hindu. He also explained that the group targeted only Hindu, not Muslim, business owners for extortion. Despite finding Debnath's testimony credible, the immigration judge denied the asylum petition, determining that Debnath failed to demonstrate a nexus between his religion and the harm he experienced. The BIA affirmed the immigration judge's determination that Debnath failed to establish a nexus.

In this petition, Debnath argues that the BIA failed to give reasoned consideration to his application for asylum. After careful review, we agree. There is no indication in the decisions in this case that the BIA, or the immigration judge for that matter, ever considered Debnath's strongest evidence of nexus, including his testimony that the attackers stated they wanted to murder Debnath because of his Hindu religion. Because the BIA and immigration judge failed to give

2

reasoned consideration to Debnath's asylum application, we grant Debnath's petition for review, vacate the BIA's decision, and remand for further proceedings.

## I.    FACTUAL BACKGROUND

Shortly after Debnath entered the United States, the Department of Homeland Security charged him with being removable, alleging that he had entered the United States not in possession of a valid, unexpired immigrant visa or other valid entry document. *See* 8 U.S.C. § 1182(a)(7)(A)(i)(I). Debnath conceded his removability and filed an application for asylum.[1] He sought asylum on the basis that he had been subjected to persecution in Bangladesh on account of his religion.

### A.    Debnath's Hearing

An immigration judge held a hearing on the merits of Debnath's asylum application. At the hearing, the immigration judge heard testimony from Debnath and also reviewed documentary evidence he submitted.

In his testimony, Debnath described his life before he fled Bangladesh. He testified that he practiced the Hindu religion[2] and operated, out of a local bazaar, a successful jewelry-making business. While living in Bangladesh, Debnath

---

[1] Debnath also filed applications for withholding of removal and protection under the Convention Against Torture, which were denied. Because our decision here turns on the immigration judge's review of the asylum application, we discuss only that application.

[2] The record reflects that approximately 90% of Bangladesh's population is Muslim and 10% is Hindu.

3

regularly attended religious services at Hindu temples, usually once or twice a week.  He served on the board of one temple and donated money to support several temples.  Regarding his business, Debnath explained that he was one of only a few Hindu individuals operating a successful business at the bazaar.

According to Debnath, he caught the attention of a Muslim group who, over the course of a five-year period, repeatedly threatened him, beat him, and extorted money from him because he practiced the Hindu religion.  The mistreatment began in June 2010 when approximately 15 Muslim individuals[3] entered Debnath's store and demanded that he make donations to support the Muslim religion.  Debnath refused because he did not want to pay money to support another religion.  The group tied up Debnath, beat him, and forcefully took his money.  Debnath went to a police station to report the incident, but the police, who are predominantly Muslim, refused to take his complaint.

A second incident occurred about two months later, in August 2010.  Again, the Muslim group entered Debnath's store and demanded that he pay money.  The group said to Debnath, "we are Muslim, you are living here, so if you . . . stay here, you have to give us the extortion money."  AR at 117.[4]  When Debnath refused to

---

[3] Debnath explained that he knew the group was Muslim based on their religious clothing and because he recognized some members of the group from the bazaar.

[4] "AR" refers to the administrative record.

4

pay, the group tied him up, threatened his life, beat him, and took his money. Debnath reported the second incident. But, again, the police did nothing.

After the second incident, the group returned to Debnath's store every two to three months to demand more money. At this point, Debnath understood that if he did not give the group money, they would kill him. Fearing for his life and his family, each time the group demanded money, Debnath would pay them between 20,000 and 40,000 taka. This pattern continued for several years: the group would come to Debnath's store and demand money, and he would pay.

In March 2015, the group came to Debnath's store and demanded a much larger amount: 500,000 taka.[5] Debnath told the group that he did not have that kind of money and could not pay. The group returned to Debnath's store that evening, tied him up, and beat him. During the beating, members of the group told Debnath, "hey, Hindu people, you die, you die." *Id.* at 120.[6] The group cut Debnath's right wrist with a knife, beat him until he was unconscious, and stole all his money. Debnath remained in the hospital for three days after the beating. Debnath's brother went to the police to report the beating, but the police refused to help.

---

[5] This amount is equivalent to approximately $6,500.

[6] During the hearing, Debnath's testimony was translated from Bengali into English. Another interpreter translated the statement as, "Get ready to die[,] you Hindu." AR at 240.

After leaving the hospital, Debnath learned that members of the group were looking for him and wanted to kill him. Rather than return home, Debnath went into hiding. Fearing for his safety, Debnath fled Bangladesh, eventually entering the United States. Debnath is afraid to return to Bangladesh because he believes that if he returns, the Muslim group will kill him.

At the hearing, the immigration judge asked Debnath how he knew that the group targeted him because of his religion and not simply because he was a successful businessman. The immigration judge pointed out that Debnath's brother—who operated a smaller, less successful jewelry business—had not been targeted by the group. Debnath explained that his brother was not as actively involved in religion and did not provide similar support to Hindu temples. Debnath also explained that other similarly successful Hindu businessmen were required to make payments but that no Muslim businessmen were extorted.

Besides introducing his own testimony, Debnath also provided the immigration judge with affidavits from friends and family members in Bangladesh. The affidavits described the incidents in which the Muslim group had extorted Debnath and beat him several times. Debnath's mother testified that the Muslim group was still searching for him and that since the last incident, "[d]ifferent Muslim people have returned to look for [Debnath] and have attempted to find out

6

about his whereabouts and whether he survived." *Id.* at 295.  According to the mother, these people "wanted to kill him." *Id.*

Debnath also provided the immigration judge with other documents detailing conditions for Hindus in Bangladesh.  These country reports and articles reflected that although Bangladesh's constitution prohibits religious discrimination, Hindus have been subjected to attacks and other mistreatment.

## B.    The Immigration Judge's Decision

The immigration judge denied Debnath's application for asylum, concluding that he failed to establish "a nexus to religion." AR at 53.  The immigration judge found Debnath's testimony credible.  The immigration judge acknowledged Debnath's testimony that a Muslim group had beat him and extorted him because they wanted to receive funds "to help support their purposes," meaning their religion. *Id.*  Indeed, the immigration judge appeared to accept that Debnath's credible testimony established that his attackers were "perhaps" motivated by a "combination of religion and money." *Id.*  The immigration judge then found that Debnath's testimony did not establish a nexus because Debnath's testimony "does not speak about religious issues being the key." *Id.*

The immigration judge ultimately concluded that the attackers' "true motivation was . . . economic concern[]." *Id.* at 53–54.  The judge noted that Debnath's brother, who remained in Bangladesh and operated a smaller business,

7

had not been targeted for similar mistreatment.  The immigration judge said he could not conclude there was a nexus based on religion simply because Debnath "was from one religion and there is another religion and they are at each other's throats over a lot of things."  *Id.* at 54.  The immigration judge went on to question whether Debnath's attackers were even Muslim, saying "[m]aybe they were, but maybe they were not" and that there was "simply . . . no evidence as to . . . who or what caused anything that may have occurred affecting" Debnath.  *Id.* at 55.  Notably, nowhere in the decision did the immigration judge mention Debnath's testimony that during the final attack, the assailants said they wanted Hindu people to die.  The immigration judge also never mentioned Debnath's testimony that the Muslim group targeted only people who were Hindu and not Muslims.[7]

## C.    The BIA's Decision

Debnath appealed to the BIA.  Among other things, Debnath argued that the immigration judge erred because after finding his testimony credible the judge "failed to consider" crucial parts of Debnath's testimony regarding the persecutor group's "anti-Hindu motives."  AR at 12.  The BIA affirmed the immigration judge's decision and dismissed Debnath's appeal.

---

[7] Having determined that Debnath failed to establish a nexus to his religion, the immigration judge did not address whether the mistreatment Debnath suffered was severe enough to constitute persecution.

Like the immigration judge's order, the BIA's decision focused on the nexus requirement. To satisfy the nexus requirement, the BIA explained, a petitioner must demonstrate that "a protected characteristic was or will be at least one central reason for the persecution he suffered or fears." *Id.* at 3 (internal quotation marks omitted). Although Debnath had testified credibly, the BIA found there was "no clear error" in the immigration judge's determination that Debnath had been "targeted for economic gain, rather than religion." *Id.* at 4. The BIA pointed to Debnath's testimony acknowledging that he was "targeted in part because he had a successful business" and that his brother, who ran a less successful business, had not been targeted. *Id.* Given this testimony, the BIA concluded that there was "no clear error" in the immigration judge's finding that Debnath "ha[d] not established a nexus between the harm he has experienced and a protected ground." *Id.*

Debnath then filed this petition for review.

## II.    STANDARD OF REVIEW

We review only the BIA's decision, except where the BIA "expressly adopts or explicitly agrees" with the immigration judge's decision. *Thamotar v. U.S. Att'y Gen.*, 1 F.4th 958, 969 (11th Cir. 2021). Here, the BIA relied on the immigration judge's decision, and although it did not expressly adopt that decision, the BIA ruled that the immigration judge had not clearly erred in its determinations at issue here. We therefore "review the [immigration judge's] opinion, to the extent that

9

the BIA found that the [immigration judge's] reasons were supported by the record." *Seck v. U.S. Att'y Gen.*, 663 F.3d 1356, 1364 (11th Cir. 2011) (internal quotation marks omitted).

We review *de novo* the BIA and immigration judge's conclusions of law. *Kazemzadeh v. U.S. Att'y Gen.*, 577 F.3d 1341, 1350 (11th Cir. 2009). We review factual findings under the substantial evidence test, which requires us to affirm the agency's factual findings so long as they are "supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Lingeswaran v. U.S. Att'y Gen.*, 969 F.3d 1278, 1286 (11th Cir. 2020) (internal quotation marks omitted). A finding of fact made by an administrative agency will be reversed "only when the record compels a reversal." *Adefemi v. Ashcroft*, 386 F.3d 1022, 1027 (11th Cir. 2004) (en banc).

The BIA and immigration judge "must consider all evidence introduced by the applicant." *Tan v. U.S. Att'y Gen.*, 446 F.3d 1369, 1374 (11th Cir. 2006) (alteration adopted) (internal quotation marks omitted); *see also* 8 C.F.R. § 1240.1(c) ("The immigration judge shall receive and consider material and relevant evidence . . . ."). But they need not discuss every piece of evidence the applicant presents so long as they give "reasoned consideration to the petition" and make "adequate findings." *Tan*, 446 F.3d at 1374 (internal quotation marks omitted). Still, the BIA and immigration judge "must consider the issues raised

and announce [their] decision[s] in terms sufficient to enable a reviewing court to perceive that [they] ha[ve] heard and thought and not merely reacted." *Id.* (internal quotation marks omitted).

## III.    LEGAL ANALYSIS

An undocumented immigrant who is present in the United States may apply for asylum. 8 U.S.C. § 1158(a)(1). The government has discretion to grant asylum if an applicant establishes that he is a "refugee." *Id.* § 1158(b)(1)(A). A refugee is a person "who is unable or unwilling to return to, and is unable or unwilling to avail himself . . . of the protection of, [his . . . country of nationality] because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." *Id.* § 1101(a)(42)(A).

To establish asylum eligibility, the applicant must, with specific and credible evidence, show "(1) past persecution on account of a statutorily listed factor" or "(2) a well-founded fear that the statutorily listed factor will cause future persecution." *Ruiz v. U.S. Att'y Gen.*, 440 F.3d 1247, 1257 (11th Cir. 2006) (internal quotation marks omitted). Persecution is an "extreme concept, requiring more than a few isolated incidents of verbal harassment or intimidation," and "mere harassment does not amount to persecution." *Sepulveda v. U.S. Att'y Gen.*,

11

401 F.3d 1226, 1231 (11th Cir. 2005) (alteration adopted) (internal quotation marks omitted).

To be eligible for asylum, an applicant also must satisfy the nexus requirement, meaning he must prove he suffered persecution "on account of a protected basis." *Perez-Sanchez v. U.S. Att'y Gen.*, 935 F.3d 1148, 1158 (11th Cir. 2019) (internal quotation marks omitted). "[I]n order to satisfy the nexus requirement, an applicant must establish his membership in a particular social group was or is 'at least one central reason' for his persecution." *Id.* (quoting 8 U.S.C. § 1158(b)(1)(B)(i)). We have explained that under this standard a "persecutor may be motivated by more than one central reason." *Id.* (internal quotation marks omitted).

We begin by noting that the immigration judge in this case made no adverse credibility finding. Rather, as the government concedes, the immigration judge expressly found Debnath's "testimony to be credible." AR at 54. In the absence of any "specific, cogent reasons for an adverse credibility finding," we accept Debnath's testimony as credible. *Mejia v. U.S. Att'y Gen.*, 498 F.3d 1253, 1257 (11th Cir. 2007) (internal quotation marks omitted).

We conclude that the decisions of the BIA and immigration judge addressing the nexus requirement were deficient because neither adequately addressed whether Debnath's past persecution occurred on account of a protected ground.

The BIA appeared to agree with the immigration judge that Debnath "was targeted for economic gain, rather than religion." AR at 4. The immigration judge characterized this as a case where Debnath "was from one religion," the persecutors were from "another religion," "they [were] at each other's throats over a lot of things," and there "simply was no evidence as to . . . what caused anything that may have occurred affecting [Debnath]." *Id.* at 54–55. The problem here is that these findings are directly at odds with Debnath's credible testimony.

Debnath's testimony indicates that the group attacked him because of his religion. He testified that during the final attack, group members screamed that they wanted to kill him because of his religion. *See id.* at 120 (explaining that during the attack group members said, "[H]ey, Hindu people, you die, you die"). In addition, Debnath testified that during the second attack, the group members explained that they were extorting Debnath because of his religion. He further testified that the only businessmen the group extorted at the bazaar were Hindu, even though there was a much larger number of Muslim businessmen there. But the BIA and the immigration judge simply ignored this testimony and made no attempt to reconcile it with their determination that there was no evidence about why Debnath was attacked.

The immigration judge also suggested that there was no nexus because it was not even clear that the attackers were Muslim. About the attackers' religion,

13

the immigration judge said, "[m]aybe they were" Muslim, "but maybe they were

not" before concluding "[t]here simply was no evidence" as to this question.  *Id.* at

55.  The only way the immigration judge could have drawn such a conclusion was

to ignore Debnath's credible testimony in which he explained how he knew the

group members were Muslim, including that he recognized them from the bazaar

and they wore special religious clothing.  But even if this testimony alone was

insufficient, Debnath also testified that the group members identified themselves as

Muslim.  We fail to see how, having found Debnath's testimony credible, the

immigration judge could say that there was no evidence as to whether the group

members were Muslim.

It seems that after finding Debnath credible the BIA and the immigration

judge "ignored the import of that credited testimony" with respect to nexus.  *Ayala*

*v. U.S. Att'y Gen.*, 605 F.3d 941, 949 (11th Cir. 2010).  We cannot tell whether the

BIA and immigration judge gave any consideration to these particularly relevant

parts of Debnath's credible testimony, which indicated that the attackers were

Muslim and that one central reason why they attacked Debnath was his Hindu

religion.[8]  *See id.* at 949–50 (concluding that the BIA failed to provide a reasoned

---

[8] We emphasize that the lack of an adverse credibility determination is the key to our decision here.  We express no opinion about whether, if the agency had made a properly supported adverse credibility determination, there would have been substantial evidence to sustain the denial of Debnath's asylum application because that question is not before us.

explanation for finding no nexus to a protected ground when the BIA agreed with the immigration judge that there was "insufficient evidence" of nexus, but neither the BIA nor the immigration judge acknowledged relevant credible testimony or reconciled that testimony with their findings). Because both the BIA and the immigration judge "failed to give reasoned consideration or make adequate findings" as to whether Debnath established a nexus, we must vacate the BIA's decision and remand for further proceedings. *See id.* at 951.[9]

## IV.    CONCLUSION

We GRANT Debnath's petition for review, VACATE the decision of the BIA, and REMAND for further proceedings.

---

[9] In light of this failure to give reasoned consideration to the asylum claim, we do not address Debnath's arguments about withholding of removal or the Convention Against Torture. *See Ayala*, 605 F.3d at 951.

15