[DO NOT PUBLISH]

In the

United States Court of Appeals

For the Eleventh Circuit

_____

No. 21-10085

Non-Argument Calendar

_____

JESUS RODRIGUEZ-ALFARO,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
Agency No. A201-901-750

_____

_____

No. 21-12500

Non-Argument Calendar

_____

JESUS RODRIGUEZ-ALFARO,

Petitioner,

*versus*

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
Agency No. A201-901-750

_____

Before JORDAN, NEWSOM, and BRASHER, Circuit Judges.

PER CURIAM:

Jesus Rodriguez-Alfaro, a native and citizen of Cuba, petitions for review of the Board of Immigration Appeals's denial of his

applications for asylum, withholding of removal, and relief under the Convention Against Torture. He also challenges the Board's decision not to reconsider or reopen the case. Rodriguez-Alfaro makes three arguments. First, that the Board clearly erred in finding that his prior abuse by the Cuban police did not rise to the level of past persecution. Second, that it applied an incorrect legal standard in evaluating his claimed fear of future persecution. And third, that the Board failed to give reasoned consideration to several of his arguments. After careful review, we deny Rodriguez-Alfaro's petition as to the first two issues and grant it in part as to the third. On that issue, we hold that the Board failed to give reasoned consideration to Rodriguez-Alfaro's argument that there was a pattern or practice of persecuting political dissidents in Cuba. Thus, we vacate the Board's decision and remand for further proceedings.

## I.    BACKGROUND

Rodriguez-Alfaro entered the United States in April 2019. The Department of Homeland Security issued a notice to appear two months later, asserting removability under the Immigration and Nationality Act, 8 U.S.C. § 1182(7)(A)(i)(I). During his credible fear interview, Rodriguez-Alfaro stated that the Cuban police cited him for not participating in a government holiday celebrating the "Committee for Defense of the Revolution," detained him and labeled him a "counterrevolutionary" for his political beliefs, and beat him, resulting in various injuries. Although he admitted to never being hospitalized, Rodriguez-Alfaro explained that the beating broke one of his teeth, for which he had seen a dentist. He also

claimed that others, including relatives, had been beaten by the police and "disappeared" when they tried to file a complaint. Rodriguez-Alfaro feared that the same thing would happen to him if he complained and that, having been identified as a counterrevolutionary, he would be detained upon his return to Cuba.

Rodriguez-Alfaro applied *pro se* for asylum, withholding of removal, and relief under the Convention Against Torture, stating that the basis for his application was political opinion. He reiterated both his claim that relatives had been beaten and imprisoned by the Cuban police and his fear that the same would happen to him if he returned. He also attached a personal statement explaining that he was arrested for no reason, beaten, and cited by the police in March 2017. This interaction led to his decision not to celebrate government holidays, which in turn led to a second detention and beating in September 2018. After recovering from the September encounter and receiving another citation, Rodriguez-Alfaro decided to leave Cuba. Alongside this statement, Rodriguez-Alfaro attached his Cuban passport, an otherwise clean criminal record, and supporting documentation from his father, who was living in the United States as a lawful permanent resident.

During a November 2019 hearing, an immigration judge explained that Rodriguez-Alfaro would need to provide the court with all "reasonably available" corroborating evidence in support of his application at a later scheduled merits hearing. At the merits hearing, Rodriguez-Alfaro testified that he used his Cuban passport to leave the country without obstruction by the government. He

also testified to essentially the same facts about his interactions with the Cuban police and confirmed that he was never hospitalized. Lastly, Rodriguez-Alfaro testified that he remembered the immigration judge's earlier instruction that he would need to provide corroborating evidence. When asked to explain the lack of any such evidence, he claimed that he was still securing letters of support and wanted to protect his remaining family in Cuba.

The immigration judge issued an oral decision denying Rodriguez-Alfaro's applications. He concluded that the claimed abuse did not rise to the level of past persecution and highlighted Rodriguez-Alfaro's failure to provide the court with corroborating evidence despite instructions to do so. Having dealt with past persecution, the immigration judge next concluded that Rodriguez-Alfaro had not shown a well-founded fear of future persecution either. The decision explained that, based on the lack of pending criminal proceedings and the fact that Rodriguez-Alfaro left the country using his own passport, he had not shown a "good reason" to believe that he would be singled out for persecution to render his fear objectively reasonable. Nor, the decision continued, had he shown a pattern or practice of persecution targeting a similarly situated group. Here, the immigration judge relied on the State Department's 2018 Human Rights Report for Cuba, explaining that despite "severe political repression," such repression was "mainly aimed at opposition politicians, journalists, activists, prominent anti-government celebrities, and academics." Because Rodriguez-Alfaro did not claim membership in any of these groups, his pattern

or practice claim failed. The same day the decision was issued, Rodriguez-Alfaro sought to submit additional documents to the immigration court, but the court rejected his submission because several had not been translated into English.

Rodriguez-Alfaro appealed to the Board, arguing that the immigration judge's conclusions on past and future persecution applied the wrong legal standard and were clearly erroneous. The Board affirmed on past persecution, relying in part on Rodriguez-Alfaro's failure to provide reasonably available corroborating evidence of his physical injuries after being instructed to do so. It also affirmed on future persecution, explaining that although Rodriguez-Alfaro's testimony established his fear as subjectively genuine, he failed to show a "good reason to fear that he [would] be singled out for persecution" that would render that fear objectively reasonable. Similarly, the Board agreed with the immigration judge that Rodriguez-Alfaro's pattern or practice claim failed, explaining that he had never claimed to be a member of any of the specific groups the immigration judge found to be targeted by the Cuban government.

Rodriguez-Alfaro moved for the Board to reconsider its decision and simultaneously petitioned this Court for review. When the Board denied his motion, Rodriguez-Alfaro petitioned for review of that decision too, resulting in the consolidated petition before us today.

21-10085                Opinion of the Court                7

## II.    STANDARDS OF REVIEW

We review the decision of the Board, as well as the decision of the immigration judge to the degree that the former adopts the latter's opinion. *Ayala v. U.S. Att'y Gen.*, 605 F.3d 941, 947–48 (11th Cir. 2010). We review legal determinations *de novo* and findings of fact under the "highly deferential" substantial evidence standard. *Id.* at 948. Under that standard, "[w]e must affirm the [administrative] decision . . . if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Silva v. U.S. Att'y Gen.*, 448 F.3d 1229, 1236 (11th Cir. 2006). Thus, we will only overturn a finding of fact "when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough . . . ." *Adefemi v. Ashcroft*, 386 F.3d 1022, 1028 (11th Cir. 2004) (en banc).

## III.    DISCUSSION

### A.    *Rodriguez-Alfaro has Abandoned Several Issues*

As an initial matter, Rodriguez-Alfaro has abandoned any challenge to the Board's decisions based on several issues. An appellant abandons an issue when he fails to discuss it or makes only a passing reference to it in his opening brief. *Sepulveda v. U.S. Att'y Gen.*, 401 F.3d 1226, 1228 n.2 (11th Cir. 2005). Because Rodriguez-Alfaro's brief does not argue whether the corroborating evidence he offered was sufficient to establish past persecution or whether he could have reasonably obtained such evidence, he has

abandoned both issues. Similarly, by making only passing references to the denial of his applications for withholding of removal and relief under the Convention Against Torture, he has abandoned challenges to both. And lastly, by not addressing the Board's denial of his motion to reconsider, Rodriguez-Alfaro has abandoned any challenge to it.

B.    *Substantial Evidence Supported The Board's Conclusion on Past Persecution*

Rodriguez-Alfaro also challenges the Board's decision on past persecution. He argues that the Board failed to give reasoned consideration to his arguments on corroboration, and alternatively, that the Board and immigration judge clearly erred in analyzing his claimed abuse. We disagree on both counts.

First, we address reasoned consideration. The Board's decision highlighted that the immigration judge, despite declining to make an adverse credibility finding, "determine[d] the applicant should provide evidence that corroborates otherwise credible testimony." In doing so, the Board cited the provision of the Immigration and Nationality Act establishing the corroboration requirement. *See* 8 U.S.C. § 1158(b)(1)(B)(ii). It also explained that Rodriguez-Alfaro had submitted no evidence corroborating his injuries or subsequent medical treatment. Although the Board's analysis was succinct and did not address Rodriguez-Alfaro's arguments on corroboration point-by-point, we have never required a point-by-point rebuttal. Instead, the Board need merely have "considered

21-10085                Opinion of the Court                9

the issues raised and announced [a] decision[] in terms sufficient to enable review." *Indrawati v. U.S. Att'y Gen.*, 779 F.3d 1284, 1302 (11th Cir. 2015). In doing so, it "need not address specifically each claim the petitioner made or each piece of evidence the petitioner presented." *Id.* (quotation marks omitted). The Board cited the relevant law and made clear that it agreed with the immigration judge's opinion on corroboration. Thus, it did not fail to give reasoned consideration to Rodriguez-Alfaro's argument on that issue.

Next, we address the merits of the Board's conclusion that Rodriguez-Alfaro had not established past persecution. Because the Board agreed with the immigration judge's reasoning, we review both decisions. *Ayala*, 605 F.3d at 947–48. We have explained that persecution is an "extreme concept" that requires more than "a few isolated incidents of verbal harassment or intimidation," or even "[m]inor physical abuse and brief detentions." *Kazemzadeh v. U.S. Att'y Gen.*, 577 F.3d 1341, 1353 (11th Cir. 2009). Despite that high standard, serious physical injury is not required where the petitioner "demonstrates repeated threats combined with other forms of severe mistreatment." *De Santamaria v. U.S. Att'y Gen.*, 525 F.3d 999, 1009 (11th Cir. 2008). "In determining whether an alien has suffered past persecution, the [immigration judge and Board] must consider the cumulative effects of the incidents." *Delgado v. U.S. Att'y Gen.*, 487 F.3d 855, 861 (11th Cir. 2007).

Applying our precedents to the record before us, we conclude that the harms that Rodriguez-Alfaro suffered do not compel a finding of past persecution. Instead, the claimed harms were less

severe than those that we have held compelled such a finding. Unlike the petitioner in *Meija v. United States Attorney General*, Rodriguez-Alfaro never received death threats, and although he was beaten, he was never attacked with a weapon or suffered any broken bones. 498 F.3d 1253, 1257–58 (11th Cir. 2007). And unlike the petitioner in *Delgado*, Rodriguez-Alfaro did not endure a mock-execution with firearms, beatings to the point of unconsciousness, or repeated and targeted vandalization. 487 F.3d at 859–61. Instead, he recovered from his September 2018 encounter with the Cuban police in a few days and with only a trip to the dentist. We think that the better comparator is *Djonda v. United States Attorney General*, where we held that substantial evidence supported the Board's conclusion that a petitioner who was beaten and threatened with arrest had not shown past persecution. 514 F.3d 1168, 1174 (11th Cir. 2008). In fact, Rodriguez-Alfaro's harms are even less severe than those of the petitioner in *Djonda*, who underwent a two-day hospital stay and was ordered to rest for two weeks. *Id.* at 1171. Rodriguez-Alfaro, on the other hand, recovered from his encounter with police in a few days and without hospitalization. Thus, in the light of the entire record, substantial evidence supported the Board's conclusion that Rodriguez-Alfaro's abuse did not rise to the level of past persecution.

C.     *The Board Applied the Correct Legal Standard When Analyzing Future Persecution*

Second, Rodriguez-Alfaro argues that the Board applied the wrong legal standard when evaluating the objective

reasonableness of his fear of future persecution. Rather than asking whether he had a "good reason" for such a fear, he contends, the Board and immigration judge should have simply asked whether his fear was "a reasonable possibility." We disagree.

Rodriguez-Alfaro relies on *Kazemzadeh* for the proposition that the Board should have applied a "reasonable possibility" standard when determining whether his fear of future persecution was objectively reasonable. 577 F.3d at 1352. But that standard refers to the overall inquiry into an applicant's well-founded fear of future persecution, not the more specific inquiry into objective reasonableness. *See id.* The latter, not the former, was the ground on which the immigration judge and Board decided Rodriguez-Alfaro's claim. *See id.* Moreover, we have consistently used the "good reason" framing, both before and after *Kazemzadeh*, to characterize the Board's analysis of whether an asylum applicant's fear of future persecution was objectively reasonable. *See Ruiz v. U.S. Att'y Gen.*, 440 F.3d 1247, 1257 (11th Cir. 2006); *Martinez v. U.S. Att'y Gen.*, 992 F.3d 1283, 1293 (11th Cir. 2021). We cannot say that the Board applied the wrong legal standard by describing its inquiry in terms that we ourselves have long relied on.

D.     *The Board Failed to Give Reasoned Consideration to Rodriguez-Alfaro's Pattern or Practice Argument*

Lastly, Rodriguez-Alfaro argues that the Board failed to give reasoned consideration to his arguments on future persecution. We agree in part.

Reviewing the immigration judge's decision, the Board affirmed that Rodriguez-Alfaro had not shown a well-founded fear of persecution that was objectively reasonable. First, it agreed with the immigration judge that he had not shown a good reason to fear that he would be singled out for persecution. In doing so, it noted that there was no evidence in the record of pending criminal charges or an outstanding arrest warrant, that Rodriguez-Alfaro had no prior penalties in his criminal records, and that he managed to leave the country using his own passport without obstruction by the government. Again, the standard for reasoned consideration is only that the Board have "considered the issues raised and announced [a] decision[] in terms sufficient to enable review." *Indrawati*, 779 F.3d at 1302. Although Rodriguez-Alfaro argues that these factual observations were not the most probative given his testimony about extralegal government action and threats, the Board explained that those threats appeared to be mere "acts of intimidation." And although the Board did not specifically mention Rodriguez-Alfaro's citation, it considered the lack of any charging document more substantive than a citation in its analysis of the record. Finally, the Board's invocation of Rodriguez-Alfaro's flight using his own passport responded to his argument that the regime, having identified him as a counterrevolutionary, would persecute him wherever he went in Cuba. Such engagement with a petitioner's arguments is more than enough to give reasoned consideration.

Having considered his future persecution argument, the Board next addressed Rodriguez-Alfaro's claim that there was a pattern or practice of persecuting political dissidents in Cuba. It agreed with the immigration judge's finding, based on the State Department's 2018 Human Rights Report, that the Cuban government mainly targeted several groups of people: "opposition politicians, journalists, activists, prominent anti-government celebrities, and academics." Explaining that Rodriguez-Alfaro had never claimed membership in any of these groups, the Board reasoned that he had not shown a pattern or practice of persecution of "a group of persons similarly situated [to himself]." 8 C.F.R. § 208.13(b)(2)(iii). But as the petition rightly points out, the Board's analysis ignored an important argument and corresponding piece of evidence: that the Cuban government allegedly perceived Rodriguez-Alfaro as a political dissident, a distinct group that the Human Rights Report repeatedly describes as facing hostile government action.

Because the immigration judge considered only the 2018 State Department Human Rights Report, and the Board followed suit, we too limit ourselves to that report. In the report, political dissidents are repeatedly referred to by name as a group targeted by the government for discrimination, detention, assault, and torture. To defend the Board's analysis, the government cites a recent unpublished decision, *Aguilera Fernandez v. United States Attorney General*, 857 F. App'x 487 (11th Cir. 2021). But that decision binds neither us nor the Board. Instead, we think that *Martinez* is

the more relevant of our precedents. 992 F.3d 1283. There, we held that the Board failed to give reasoned consideration to a pattern or practice argument based on the petitioner's status as a journalist. Journalists are one group specifically mentioned in the 2018 Human Rights Report. Political dissidents are another. By analyzing Rodriguez-Alfaro's pattern or practice claim using an incomplete list of targeted groups that excluded political dissidents, the Board failed to give reasoned consideration to his argument.

We reiterate that we do not decide the merits of Rodriguez-Alfaro's pattern or practice claim. That question is for the Board on remand. But the claim cannot simply be brushed aside by reference only to persecuted groups that Rodriguez-Alfaro has never claimed membership in, at the expense of ones he has. Instead, the Board must address his argument head on.

## IV.    CONCLUSION

For the foregoing reasons, Rodriguez-Alfaro's petition is **GRANTED** in part and **DENIED** in part. To the degree that the petition is **GRANTED**, the Board's decision is **VACATED** and **REMANDED** for further proceedings.